Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 10, 2018

**2018 CO 96**

**No. 16SC952, *Cowen v. People* — Sentencing — Restitution — Compensable Losses.**

The supreme court holds that Colorado's restitution statutes do not allow trial courts to order restitution for pecuniary losses caused by conduct that formed the basis of a charge of which the defendant has been acquitted.  Even where the defendant has been convicted of a separate charge, this state's restitution statutes do not permit a trial court to impose restitution for losses suffered as a result of the acquitted conduct.  The prosecution's contrary construction would both violate well-settled rules of statutory interpretation and run afoul of the Fourteenth Amendment's guarantee of procedural due process.

Because the court of appeals affirmed the order requiring the defendant to pay restitution for losses caused by conduct supporting an acquitted charge, the supreme court reverses that court's decision.  The matter is remanded to the court of appeals for further proceedings consistent with this opinion.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 96

### Supreme Court Case No. 16SC952
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA2354

### Petitioner:

Jared Cowen,

v.

### Respondent:

The People of the State of Colorado.

### Judgment Reversed
*en banc*
December 10, 2018

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Julia Chamberlin, Deputy Public Defender
*Denver, Colorado*

**Attorneys for Respondent:**
Cynthia H. Coffman, Attorney General
Katharine Gillespie, Senior Assistant Attorney General
*Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.

¶1     Restitution is "a crucial element of sentencing." *Roberts v. People*, 130 P.3d 1005, 1007 (Colo. 2006).  Today we must determine whether Colorado's restitution statutes authorize a trial court to order a defendant who has been acquitted of a charge to pay restitution for pecuniary losses caused by the conduct that formed the basis of that charge.[1]  The trial court answered the question in the affirmative and ordered Jared Cowen to pay restitution for losses that resulted from acquitted conduct.  A division of the court of appeals upheld the restitution order in an unpublished, unanimous decision.  We disagree with the division and reverse.

¶2     We hold that Colorado's restitution statutes do not allow a trial court to impose restitution for pecuniary losses caused by conduct that formed the basis of a charge of which the defendant has been acquitted.  Even where, as here, the defendant has been convicted of a separate charge, our restitution statutes do not permit a trial court to order restitution for losses suffered as a result of the acquitted conduct.  The People's contrary construction would at once violate our rules of statutory interpretation and offend the Fourteenth Amendment's guarantee of procedural due process.  Therefore, we reject it. To the extent that previous decisions of the court of appeals are in conflict with this opinion, we now disapprove of them.

---

[1] For the sake of brevity, we sometimes refer to conduct that formed the basis of a charge of which a defendant has been acquitted as "acquitted conduct."

## I. Factual and Procedural History

¶3 Cowen owned a semi-truck as part of his trucking business. Because his semi-truck was in need of extensive maintenance, he took it to a repair shop. To pay the $37,485.65 bill, Cowen borrowed $15,000 from his brother and wrote two checks from his company's bank account, one for $9,327.65 ("the first check") and the other for $13,158.00 ("the second check"). Cowen admitted at trial that he knew he did not have sufficient funds to cover the checks when he wrote them, and his bank records corroborated his testimony. He explained, however, that he meant to put enough money in his account to cover the checks. More specifically, he claimed that he planned to deposit checks that totaled more than the amount of the first check and that he intended to obtain a loan from a financing company in the amount of the second check. But Cowen ultimately failed to add sufficient funds to his company's account to cover either check.

¶4 Believing it had been paid in full when it received Cowen's checks, the repair shop released the semi-truck to him. A few days later, it learned that both of Cowen's checks had failed to clear and that Cowen had issued a stop-payment on them. When the repair shop contacted Cowen, he stated that its work was unsatisfactory.

¶5 Cowen was thereafter charged with two counts of fraud by check—one count for each of the checks. He defended against the charges by asserting that he did not intend to defraud the repair shop. The jury convicted Cowen of the charge related to the first check, but acquitted him of the charge related to the second check.

¶6 The trial court sentenced Cowen to probation for a period of three years. As part of Cowen's sentence, the People requested restitution in the amount of $22,485.65, the

3

total amount of the two checks. Cowen objected to any restitution being imposed for pecuniary losses suffered by the repair shop as a result of the second check because he was acquitted of the charge involving that check. Following a hearing, the trial court granted the People's request, finding that they had proven by a preponderance of the evidence that Cowen had written both checks knowing he had insufficient funds in his company's account to cover them. The trial court acknowledged Cowen's acquittal of the charge related to the second check, but explained that it was "absolutely convinced . . . , by far more than a preponderance of the evidence," that Cowen knew he had failed to secure the financing company's loan to fund that check.

¶7      Cowen appealed, and a division of the court of appeals affirmed the restitution order. The division concluded that our restitution statutes define a victim based on a defendant's conduct, "not the charge of which the defendant was convicted." *People v. Cowen*, No. 14CA2354, ¶ 28 (Colo. App. Nov. 23, 2016). Consequently, reasoned the division, regardless of whether a defendant is convicted of a charge, "[i]f the underlying conduct proximately cause[d] [the] victim's loss, restitution is appropriate." *Id.* Given the trial court's finding that Cowen's underlying conduct proximately caused the repair shop's $22,485.65 losses, the division upheld the restitution order. *Id.* at ¶ 29. This appeal followed.[2]

---

[2] We granted certiorari on the following question:

4

## II. Analysis

¶8 Cowen avers that Colorado's restitution statutes authorize the imposition of restitution only for losses caused by conduct of which a defendant has been convicted.[3] Alternatively, Cowen maintains that if the restitution statutes are construed as the People posit, they will be rendered unconstitutional pursuant to the United States Supreme Court's recent decision in *Nelson v. Colorado*, ___ U.S. ___, 137 S. Ct. 1249 (2017).[4] Under *Nelson*, Cowen argues, restitution related to the second check is barred because he retains the presumption of innocence as to the charge premised on that check.

¶9 The People disagree and urge us to conclude that restitution may be awarded under our statutory scheme even if the defendant is acquitted of the crime charged. All that is required, assert the People, is a post-trial finding from the trial court by a preponderance of the evidence that the victim was aggrieved by the defendant's conduct and that such conduct was the proximate cause of the alleged pecuniary losses. The People acknowledge the holding in *Nelson*, but contend that it is inapplicable because Cowen was convicted of at least one charge. This conviction, they claim, divests Cowen of the presumption of innocence as to any charge in this case.

---

Whether the court of appeals erred by affirming the trial court's imposition of restitution on an acquitted count for losses that did not result from the criminal conduct that was the basis for the petitioner's conviction.

[3] Cowen's contention is framed broadly and includes losses for *uncharged* conduct. But the question we resolve is narrower, as it is limited to losses caused by *acquitted* conduct.

[4] *Nelson* was announced after the court of appeals issued its opinion in this case.

¶10 We begin by setting forth the standard of review that controls Cowen's appeal. Next, we discuss our rules governing statutory interpretation and apply those rules to our restitution statutes. We pivot from our interpretation to analyze the People's contrasting construction. Specifically, we consider whether the People's reading of the pertinent statutory provisions is in accord with our rules of statutory interpretation and whether it runs afoul of the right to procedural due process under the Fourteenth Amendment. We end by addressing the merits of Cowen's argument that the court of appeals erred in holding that the trial court was authorized to order him to pay restitution for the second check.

## A. Standard of Review

¶11 We review questions of statutory construction de novo. *Pineda-Liberato v. People*, 2017 CO 95, ¶ 21, 403 P.3d 160, 164. Questions of law are likewise reviewed de novo, *People v. Porter*, 2015 CO 34, ¶ 8, 348 P.3d 922, 924, and we agree with the parties that whether a trial court has authority to impose restitution for losses suffered as a result of acquitted conduct is a question of law.

## B. Rules of Statutory Interpretation

¶12 When interpreting a statute, "our primary purpose is to ascertain and give effect to the General Assembly's intent." *Pineda-Liberato*, ¶ 22, 403 P.3d at 164. The starting point in this endeavor is to examine the plain meaning of the statutory language. *Marsh v. People*, 2017 CO 10M, ¶ 20, 389 P.3d 100, 105. The plain meaning rule is the cardinal rule in the realm of statutory interpretation; as the United States Supreme Court observed in *Connecticut National Bank v. Germain*, "a court should always turn first" to the plain

meaning rule "before all other[ ]" rules because "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." 503 U.S. 249, 253–54 (1992). Consequently, if the language in a statute is clear and unambiguous, we give effect to its plain meaning and look no further. *Lewis v. Taylor*, 2016 CO 48, ¶ 20, 375 P.3d 1205, 1209. In such a situation, the "first canon is also the last" and the "judicial inquiry is complete." *Germain*, 503 U.S. at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). Only if the statutory language is susceptible to more than one reasonable interpretation and is therefore ambiguous may we resort to extrinsic aids of construction to address the ambiguity and decide which reasonable interpretation to accept based on the legislature's intent. *Lewis*, ¶ 20, 375 P.3d at 1209.

¶13 In applying the plain meaning of statutory language, we must "give consistent effect to all parts of [the] statute, and construe each provision in harmony with the overall statutory design." *Larrieu v. Best Buy Stores, L.P.*, 2013 CO 38, ¶ 12, 303 P.3d 558, 560–61. Relatedly, our construction must avoid or resolve potential conflicts and give effect to all legislative acts, if possible. *People v. Stellabotte*, 2018 CO 66, ¶ 32, 421 P.3d 174, 180.

¶14 "In the absence of . . . a definition, we construe a statutory term in accordance with its ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994); *see also Roup v. Commercial Research, LLC*, 2015 CO 38, ¶ 8, 349 P.3d 273, 276 ("When a statute does not define a term, we assume that the General Assembly intended to give the term its usual and ordinary meaning."). This approach honors our preference for the commonly accepted meaning of statutory terms over "strained or forced interpretation[s]." *Roup*, ¶ 8, 349 P.3d at 275. When determining the plain and ordinary meaning of words, we

may consider a definition in a recognized dictionary. *See, e.g., People v. Hunter*, 2013 CO 48, ¶ 10, 307 P.3d 1083, 1086 (determining the plain meaning of the statutory term "stranger" by consulting Webster's New College Dictionary and Black's Law Dictionary).

¶15 With these rules in mind, we shift gears to examine Colorado's restitution statutes. Our mission is to determine whether the General Assembly intended to permit restitution for losses caused by acquitted conduct.

## C. Colorado's Restitution Statutes

¶16 Our jumping-off point is the language in the restitution statutes. Because we are able to decipher and enforce the plain meaning of the statutory language, we do not invoke the aid of other interpretative rules.

¶17 Part 6 of article 1.3 of our criminal code (title 18) addresses restitution. Section 601 sets forth the legislative declaration, section 602 contains definitions, and section 603 governs restitution orders and the assessment of restitution. Together, these sections manifest the General Assembly's intent to prohibit restitution for losses caused by acquitted conduct.

¶18 After acknowledging in section 601 that all victims of crime "endure undue suffering and hardship" as a result of injury or loss of property, the General Assembly declared in the same section that individuals "*found guilty* of causing such suffering and hardship should be under a moral and legal obligation to make full restitution to those harmed by their misconduct." § 18-1.3-601(1)(a), (b), C.R.S. (2018) (emphasis added). Consistent with this proclamation, section 603 provides that "[e]very *order of conviction* of a felony, misdemeanor, petty, or traffic misdemeanor offense . . . shall include

8

consideration of restitution." § 18-1.3-603(1), C.R.S. (2018) (emphasis added). As relevant here, section 602 defines "conviction" as "*a verdict of guilty* by a judge or jury or *a plea of guilty or nolo contendere* that is accepted by the court for a felony, misdemeanor, petty offense, or traffic misdemeanor offense." § 18-1.3-602(2), C.R.S. (2018) (emphases added).

¶19    There is nothing ambiguous about the quoted provisions. The legislature clearly meant to limit restitution liability to individuals *found guilty* of causing injury or property loss that resulted in suffering or hardship to victims harmed by their misconduct. Further, with one limited exception not pertinent here, the legislature required only "order[s] of conviction"—meaning only orders memorializing a guilty verdict or a guilty or nolo contendere plea for any felony, misdemeanor, petty offense, or traffic misdemeanor offense—to include consideration of restitution.[5]

¶20    But how did the General Assembly define "restitution"? "Restitution" is "any pecuniary loss suffered by a victim" which was "proximately caused by an *offender's conduct*" and "can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a) (emphasis added). "Victim," as used in the definition of "restitution," means "any person aggrieved by the *conduct of an offender*." § 18-1.3-602(4)(a) (emphasis

---

[5] The exception is "any order of conviction for a state traffic misdemeanor offense issued by a municipal or county court in which the prosecuting attorney is acting as a special deputy district attorney pursuant to an agreement with the district attorney's office." § 18-1.3-603(1).

added).  Thus, in defining "restitution" and "victim," the legislature referred to an "offender's conduct" and the "conduct of an offender."

¶21    Black's Law Dictionary defines "offender" as "[s]omeone who has committed a crime; [especially], one who has been convicted of a crime."  *Offender*, Black's Law Dictionary 1249 (10th ed. 2014).  Similarly, Merriam-Webster Online Dictionary defines "offender" as "a person who has committed a crime."  *Offender*, Merriam-Webster Online Dictionary, https://perma.cc/5PAW-74M9.  Giving the word "offender" its plain meaning, the definitions of "restitution" and "victim" illustrate that the legislature did not intend to empower trial courts to order someone acquitted of a charge to pay restitution for losses caused by the conduct underlying that charge.  When an individual is acquitted of a charge, he cannot be deemed an "offender" because he is by definition not a person who committed the crime charged.  It follows that the conduct on which the charge was based cannot constitute the "conduct of an offender."  Nor can the victim named in the acquitted charge be considered a person aggrieved by the "conduct of an offender."

¶22    Other provisions in the legislative declaration buttress our conclusion.  For instance, the legislature proclaimed that "[t]he payment of restitution by criminal offenders to their victims is a mechanism for the rehabilitation of offenders" and serves "as a deterrent to future criminality."  § 18-1.3-601(1)(c), (d).  The legislature added that restitution aids "the offender in reintegration as a productive member of society."  § 18-1.3-601(2).  Not only do these subsections refer to "the offender," "offenders," and "criminal offenders," they relate to their rehabilitation and reintegration, as well as to the

10

deterrence of future criminal conduct. A defendant who is acquitted of a charge is not an offender in need of rehabilitation or reintegration, and his conduct does not trigger deterrence concerns. Hence, the legislature's choice of wording reflects its intent to exclude from the restitution umbrella any losses caused by acquitted conduct.[6]

---

[6] The legislature employed the term "offender" throughout the legislative declaration provisions in section 601 and throughout the definitions in section 602. We recognize that throughout section 603, which largely discusses orders of restitution entered pursuant to that section and restitution-related information that orders of conviction must include, the legislature used the term "defendant." However, given the legislative declaration provisions and the definitions, we read the term "defendant" in section 603 to refer to "offender."

A "defendant" is "[a] person sued in a civil proceeding or accused in a criminal proceeding," *Defendant*, Black's Law Dictionary 508 (10th ed. 2014), or "a person . . . against whom a criminal or civil action is brought," *Defendant*, Merriam-Webster Online Dictionary, https://perma.cc/54R8-XW2Q. It follows that an "offender" is always a "defendant"; indeed, an "offender" is a "defendant" who has been found to have committed a crime. Just because a "defendant" becomes an "offender" when he is found to have committed a crime does not mean that he ceases to be the "defendant" in the case — that is, the party sued or against whom the legal action was brought. In fact, "defendant" is the term most frequently used in both legal and common parlance to refer to such a party, including in post-trial proceedings. Conversely, though, the term "offender" does not typically refer to a "defendant" unless the defendant has been found to have committed a crime.

We are aware, of course, that generally "the use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings." *People v. Rediger*, 2018 CO 32, ¶ 22, 416 P.3d 893, 899. But our review of the criminal code corroborates our understanding of "defendant" in section 603. As far as we can tell, the legislature used the term "defendant" throughout the criminal code to refer to both defendants who have been found to have committed a crime and defendants who haven't. *Compare, e.g.*, § 18-1.3-107(1), C.R.S. (2018) ("At the time of conviction or at any time thereafter, upon the request of the defendant or upon the court's own motion, a court may enter an order of collateral relief in the criminal case . . . ."), *with* § 18-1-405(1), C.R.S. (2018) ("[I]f a defendant is not brought to trial . . . within six months from the date of the entry of a plea of not guilty, he shall be discharged from custody . . . and . . . the pending charges shall be dismissed, and the defendant shall not again be indicted,

11

¶23   Even when an individual is acquitted of one charge and convicted of another, the conduct underlying the acquitted charge cannot serve as the basis of a restitution order. Such conduct is not an "offender's conduct" and can neither warrant a deterrent nor prompt rehabilitation or reintegration efforts. That the individual is an offender for purposes of a *different* charge does not alter these conclusions. Correspondingly, the individual's offender status based on one conviction does not render the victim named in the acquitted charge a person aggrieved by the conduct of an offender—at least not with respect to the acquitted charge.

¶24   Therefore, we hold that Colorado's restitution statutes do not allow a trial court to impose restitution for pecuniary losses caused by acquitted conduct. Even where, as here, the defendant has been convicted of a separate charge, a trial court may not order restitution for losses suffered as a result of acquitted conduct.

## D.  The People's Statutory Construction Contravenes Well-Established Rules

¶25   The People zero in on the legislature's use of the word "conduct" and argue that it is the individual's conduct—be it acquitted or not—that determines if there is a victim

---

informed against, or committed for the same offense . . . ."). On the other hand, unless otherwise specified, the legislature seemingly reserved the term "offender" to refer only to defendants who have been found to have committed a crime. *See, e.g.,* § 18-1.3-701(1)(a), C.R.S. (2018) ("Where any person, association, or corporation is convicted of an offense . . . the court shall give judgment . . . against the offender . . . for the amount of the costs of prosecution, the amount of the cost of care, and any fine imposed."). Importantly, we note that our interpretation avoids potential conflicts and gives consistent, harmonious, and sensible effect to all the parts of the restitution statutory scheme.

12

who is entitled to restitution. The definitions of "restitution" and "victim" refer to "conduct," they say, not to "criminal conduct" or "conduct underlying [a] conviction." Even so, the People overlook that the term "conduct" is qualified each time by the word "offender." It is only an *offender's conduct* that may justify a restitution order. Because conduct underlying a charge of which a defendant has been acquitted is not an "offender's conduct," it cannot serve as the factual foundation on which a restitution order rests.

¶26 But the People insist that our decision in *Dubois v. People*, 211 P.3d 41 (Colo. 2009), supports their reading of the restitution statutes. We disagree. *Dubois* is inapposite and, consequently, too slender a reed for the People to lean on in this case.

¶27 Dubois pled guilty to one count of vehicular eluding for attempting to flee from Deputy Thompson. *Id.* at 42. As Deputy Thompson was in pursuit, he called for assistance. *Id.* Deputy Benavidez was among those who responded to provide backup. *Id.* While en route, however, she was involved in an accident during which she suffered injuries and her patrol car sustained severe damage. *Id.* The People requested restitution for the pecuniary losses sustained by Deputy Benavidez and her county, even though she was miles away from the chase when she crashed her car.[7] *Id.* at 43–45. The trial court ordered restitution and the court of appeals upheld the restitution order. *Id.* at 42.

---

[7] The prosecution could not have charged Dubois with eluding Deputy Benavidez because the crime of vehicular eluding requires proof that the defendant knowingly

13

¶28 In affirming the court of appeals, we acknowledged that the previous version of the restitution statutes defined "victim" as a person "directly" aggrieved by the offender's conduct, but we observed that the 2000 amendments replaced the "direct" requirement with the broader definition of victim that remains in effect today—namely, "any person aggrieved by the conduct of an offender." *Id.* at 44 (quoting § 18-1.3-602(4)(a), C.R.S. (2008)). We concluded that, after the amendments, the restitution statutes "no longer limit[] restitution only to persons [directly] injured by the conduct alleged as the basis for the conviction." *Id.* at 45 (internal quotation marks and citation omitted). Because Deputy Benavidez was "aggrieved by" Dubois's conduct and her county suffered losses when her vehicle was damaged, we found that Deputy Benavidez and her county both fell "within the [new] understanding of 'victim.'" *Id.* at 45–46.

¶29 We cautioned, though, that the statutory phrase, "aggrieved by the conduct of an offender," should not be understood as "limitless in its reach." *Id*. at 46. In that same vein, we explained that we arrived at our ultimate determination there "because th[e] case present[ed] a relatively discrete scenario." *Id.* "[A]n essential element of the underlying crime require[d] the primary 'victim' to be a peace officer," and the trial court determined that "Deputy Benavidez was required to assist [Deputy Thompson] when

_____

eluded (or attempted to elude) a peace officer and that the defendant knew or should have known he was being pursued by *that* peace officer. *See* § 18-9-116.5(1), C.R.S. (2018).

14

she heard the call on her radio." *Id.* In addition, the crime of vehicular eluding "require[d] the use of a vehicle and it [was] reasonably foreseeable that other peace officers would respond by driving to the scene of the crime and might sustain injuries from a vehicular accident while responding." *Id.* It was only "[u]nder these facts" that we held that Deputy Benavidez and her county fell within the purview of "victim" for restitution purposes. *Id.*

¶30 The People conflate the conduct in the "relatively discrete" context of *Dubois* with a defendant's conduct underlying an acquitted charge. Nothing we said in *Dubois* suggests that conduct underlying a charge of which a defendant has been acquitted may sustain a restitution order. *Dubois* dealt with a situation that stands in stark contrast to the one before us now.[8]

¶31 Significantly, our interpretation of the restitution statutes here and our holding in *Dubois* comport with section 18-1.3-703, C.R.S. (2018), which was enacted by the

---

[8] *People v. Borquez*, 814 P.2d 382 (Colo. 1991), is equally unavailing to the People. There, we upheld the order requiring Borquez, a cashier at Target, to pay restitution for Target's total pecuniary losses as a result of multiple thefts over an extended period of time, even though she pled guilty to only one count of theft with a single date of offense. *Id.* at 383–84. Like *Dubois*, *Borquez* did not involve acquitted conduct. Further, as we did in *Dubois*, we anchored our holding in *Borquez* to the specific "facts of [the] case." *Id.* at 384. Borquez had "acknowledged her criminal conduct and the resulting pecuniary loss incurred by Target in several written statements," and her counsel had "tacitly admitted that the plea agreement was based upon a series of thefts." *Id.* As well, the injuries suffered by Target were deemed to have resulted "from [Borquez's] charged conduct." *Id.*; *cf. Dubois*, 211 P.3d at 45–46 (concluding that Deputy Benavidez was aggrieved by Dubois's charged conduct and that her county suffered losses when her vehicle was damaged).

15

legislature last year. Under that statute, the following individuals are eligible to receive

"a refund of monetary payments" made:

> (a) A defendant whose court-ordered fines, fees, costs, surcharges, *restitution*, interest, or other monetary amounts resulting from a criminal conviction . . . have been paid if the amount paid relates solely to a conviction:
>
>> (I) That is vacated after postconviction proceedings or is overturned on appeal; and
>>
>> (II) The charge on which the conviction was based is dismissed or the [defendant] is *acquitted* of the charge after a new trial;
>
> (b) A defendant whose court-ordered *restitution* and interest resulting from a criminal conviction . . . have been paid and:
>
>> (I) The *restitution* ordered by the court is reversed on appeal; or
>>
>> (II) The amount of *restitution* ordered by the court is reversed on appeal and the *restitution*, including interest, that has been paid is in excess of the amount upheld on appeal.

§ 18-1.3-703(1) (emphases added). Although this statute is not limited to restitution and

is, therefore, catalogued in a different part of article 1.3, it covers restitution payments

among other "monetary payments."[9] We must interpret section 18-1.3-703(1) together

with the restitution statutes so as to "give consistent, harmonious, and sensible effect to

all of [their] parts," as well as to avoid "constructions that would render any words or

---

[9] Section 18-1.3-703 was added to part 7 of article 1.3 of title 18, which is titled "Fines and Costs."

16

phrases superfluous or lead to illogical or absurd results." *Am. Family Mut. Ins. Co. v. Barriga*, 2018 CO 42, ¶ 8, 418 P.3d 1181, 1183 (quotation marks and citation omitted).

¶32 Given the provisions in section 18-1.3-703(1)—which expressly permit a refund for restitution previously paid when (a) a conviction is overturned on appeal and the defendant is acquitted in the new trial, (b) the restitution order is reversed on appeal, or (c) the amount set forth in the restitution order is reversed on appeal and the restitution that has been paid exceeds the amount upheld—it would be illogical and absurd to construe the restitution statutes as authorizing restitution for pecuniary losses caused by acquitted conduct. We are duty-bound to ward off such an unreasonable outcome.

¶33 In sum, the People's construction flies in the face of the plain meaning rule and would lead to an irrational result. Therefore, we decline to adopt it.

### E. The People's Statutory Construction Raises Constitutional Concerns

¶34 There is one other serious concern that militates against embracing the People's position—it transgresses the Fourteenth Amendment's guarantee to procedural due process. Thus, the People's interpretation of the restitution statutes falters on this additional, independent ground.

¶35 In *Nelson*, the United States Supreme Court applied the well-known "procedural due process inspection" articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and held that when a defendant's criminal conviction is overturned on appeal or vacated in a post-conviction proceeding and there is no retrial or the retrial results in an acquittal, the state is required "to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction." *Nelson*, 137 S. Ct. at 1255, 1252.

17

Harkening back to a tenet of criminal jurisprudence of ancient and venerable vintage, the Court reminded us that, "[a]bsent conviction of a crime, one is presumed innocent." *Id.* at 1252. The Court explained that an individual's presumption of innocence is restored when his conviction is invalidated, and "Colorado may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions." *Id.* at 1256. Because the law in Colorado in effect at the time allowed the State to keep conviction-related exactions unless a prevailing defendant brought a civil action and established her innocence by clear and convincing evidence, the Court found a violation of the guarantee of procedural due process. *Id.* at 1255.

¶36 Extending the teachings of *Nelson* to the situation confronting us, we find that the People's construction of the restitution statutes would render them unconstitutional. Notably, the decision in *Nelson* was the impetus for the enactment of section 18-1.3-703, which replaced the statutory scheme voided by the Supreme Court. The People maintain, though, that neither *Nelson* nor section 18-1.3-703 applies because Cowen was convicted of one of the charges brought against him. According to the People, only when a defendant has been acquitted of all the charges is the presumption of innocence restored and restitution barred. The People cite no direct authority for this proposition, and we have been unable to unearth any.

¶37 We do not agree with the People's overly technical and unduly narrow reading of *Nelson*. To be sure, the Court in *Nelson* reasoned that a person who has been "adjudged guilty of no crime" cannot be presumed guilty enough for monetary exactions. *Id.* at 1256. But both of the petitioners in *Nelson* stood convicted of no crime by the time their

cases reached the Court. Understandably, then, the Court discussed the presumption of innocence in the context of a person who has been "adjudged guilty of no crime." It requires too substantial a leap to deduce from this excerpt that the Court intended to limit its ruling to situations in which the defendant has been acquitted of all charges. Had that been what the Court meant, it presumably would have said so.

¶38     Moreover, it is now axiomatic that the presumption of innocence applies to each crime charged. If the jury acquits a defendant of a particular charge, the defendant retains the presumption of innocence with respect to that charge regardless of whether he is found guilty of a different charge. To hold otherwise would be tantamount to declaring that when the jury finds a defendant guilty of one charge and not guilty of another, the trial court may nevertheless consider the defendant guilty of the acquitted charge by a less demanding standard of proof. That would be nonsensical even in the context of restitution. Thus, we are convinced that, to comport with procedural due process, restitution must be prohibited for losses resulting from conduct of which a defendant has been acquitted and as to which he retains the presumption of innocence.[10]

### F. Restitution for the Second Check

¶39     Cowen was acquitted by the jury of the fraud charge related to the second check. Under our restitution statutes, the trial court lacked authority to order him to pay

---

[10] We leave for another day the question of whether, in the wake of *Nelson*, restitution ordered for losses caused by uncharged conduct passes constitutional muster.

restitution for the pecuniary losses suffered by the repair shop as a result of that check. Cowen's fraud conviction for the first check was of no consequence. That conviction could not undo the jury's acquittal and metamorphose Cowen's conduct in writing and tendering the second check into an offender's conduct.

¶40 *Nelson* similarly instructs, albeit from a constitutional perspective, that a trial court may not disregard a defendant's acquittal in resolving a motion for restitution. When the jury spoke and found Cowen not guilty of the charge related to the second check, the verdict established that his presumption of innocence remained intact as to that charge. Having been adjudged guilty of no crime for writing and tendering the second check, Cowen could not be ordered to pay restitution in the amount of $13,158.00 for the pecuniary losses associated with that check.

### III. Conclusion

¶41 We hold that Colorado's restitution statutes do not allow a trial court to impose restitution for pecuniary losses caused by conduct that formed the basis of a charge of which the defendant has been acquitted. Even where, as here, the defendant has been convicted of a separate charge, our restitution statutes do not permit a trial court to order restitution for losses suffered as a result of the acquitted conduct.

¶42 Thus, we conclude that the trial court erred in ordering Cowen to pay restitution for pecuniary losses related to the second check. Because the court of appeals affirmed the restitution order, we reverse its decision. The matter is remanded to the court of appeals for further proceedings consistent with this opinion.

20