The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 12, 2019

## 2019COA182

**No. 17CA2225, *People v. Sosa* — Criminal Law — Sentencing — Restitution**

A division of the court of appeals concludes — as a matter of first impression, and as an extension of the rationale in *Cowen v. People*, 2018 CO 96 — that Colorado's restitution statutes do not authorize a trial court to order a defendant to pay restitution for pecuniary losses caused by conduct for which a defendant was never criminally charged.

Because defendant was ordered to pay restitution for losses arising from conduct for which she was not charged, the division reverses the restitution order as it applies to defendant and remands the case to the district court for further proceedings.

Court of Appeals No. 17CA2225
Pueblo County District Court No. 16CR2039
Honorable Thomas B. Flesher, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Alicia Sherie Sosa,

Defendant-Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE BROWN
Furman and Davidson*, JJ., concur

Announced December 12, 2019

Philip J. Weiser, Attorney General, Erin K. Grundy, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Patricia Jo Stone, P.C., Jay C. Fisher, Parker, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1     Defendant, Alicia Sherie Sosa, appeals from the district court's order imposing restitution. As a matter of first impression, and as an extension of the rationale in *Cowen v. People*, 2018 CO 96, we conclude that Colorado's restitution statutes do not authorize a trial court to order a defendant to pay restitution for pecuniary losses caused by conduct for which a defendant was never criminally charged. Because Sosa was ordered to pay restitution for losses arising from conduct for which she was not charged, we reverse the restitution order as it applies to Sosa and remand the case to the district court for further proceedings.

## I. Background

¶ 2     At approximately 1 a.m. on February 28, 2016, two men were injured and one man was killed during a drive-by shooting at the Iron Horse Bar in Pueblo. Police identified Angelo Salas and Timothy Trujillo as the primary suspects and issued warrants for their arrest.

¶ 3     During the investigation, police learned that Sosa was Salas's girlfriend. About a week after the shooting, police located Sosa's rental car and conducted a traffic stop. Salas was inside and was

arrested. The officers also identified Trujillo in a car stopped just behind Sosa's during the traffic stop. Trujillo was also arrested.

¶ 4 In a subsequent interview, Sosa admitted that she knew there was an outstanding warrant for the men and that she had been camping out with them since the shooting.

¶ 5 Sosa was charged with accessory to the crime of first or second degree murder. To facilitate a plea agreement, the prosecution added a second count of accessory to second degree murder heat of passion. Sosa pleaded guilty to the second count, and the first count was dismissed. As part of the plea agreement, Sosa acknowledged that she would be ordered to pay restitution and that the dismissed count would be considered for sentencing and restitution purposes. The court sentenced her to ninety days in jail followed by three years of supervised probation.

¶ 6 The prosecution moved the court to order Sosa to pay restitution, including $25,253.82 to the Victim Compensation Fund and $5562.70 to the claimant for the deceased victim. The prosecution asked that Sosa be ordered to pay restitution jointly and severally with her co-defendants: Salas, Trujillo, and Trujillo's girlfriend. The requested restitution included the shooting victims'

medical bills and lost wages, the deceased's funeral costs and outstanding rent and utility bills, and travel expenses related to the deceased's funeral. The court granted the motion in full.

¶ 7     Sosa timely objected to the amount of the restitution order. The court held a hearing, denied Sosa's objections, and stood on its prior restitution order.

¶ 8     Sosa appeals.

¶ 9     After the opening brief was filed, the Colorado Supreme Court announced *Cowen*, which held that "Colorado's restitution statutes do not allow a trial court to impose restitution for pecuniary losses caused by conduct that formed the basis of a charge of which the defendant has been acquitted." *Cowen*, ¶ 2. Although the supreme court expressly declined to consider whether a defendant could be ordered to pay restitution for losses caused by uncharged conduct, *id.* at ¶ 8 n.3, we ordered the parties to file supplemental briefs to address the impact of *Cowen*, if any, on Sosa's appeal.

## II.     Analysis

### A.     Standard of Review

¶ 10    In her opening brief, Sosa contends that the district court abused its discretion by ordering her to pay joint and several

restitution for the shooting victims' losses because she was not the proximate cause of those losses. We review a district court's restitution order for an abuse of discretion. *See People v. Henry*, 2018 COA 48M, ¶ 12. A court abuses its discretion where its decision misconstrues or misapplies the law, or is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 11     In her supplemental brief, Sosa argues that the district court's restitution order is not authorized by Colorado's restitution statutes. Whether a trial court has authority to impose restitution for losses suffered as a result of uncharged conduct is a question of law that we review de novo. *Cf. Cowen*, ¶ 11 ("[W]e agree with the parties that whether a trial court has authority to impose restitution for losses suffered as a result of acquitted conduct is a question of law."). We also review questions of statutory construction de novo. *Id.*

### B.     Rules of Statutory Interpretation

¶ 12     When interpreting statutes, our primary goal is to ascertain and give effect to the legislative intent. *Id.* at ¶ 12. To do so, we look first at the language of the statute, giving words and phrases

4

their plain and ordinary meanings, *Henry*, ¶ 14, if the language is clear and unambiguous, *Cowen*, ¶ 12.

¶ 13    In applying the plain meaning of a statute, we must give consistent effect to all its parts and construe each provision in harmony with the overall statutory design. *Id.* at ¶ 13. When a statutory term is undefined, we construe it in accordance with its ordinary meaning. *Id.* at ¶ 14.

## C.    The Law of Restitution

¶ 14    Restitution must be considered as a part of every criminal conviction. § 18-1.3-603(1), C.R.S. 2019; *People v. Stotz*, 2016 COA 16, ¶ 86. "We liberally construe the restitution statute to accomplish its goal of making victims whole for the harms suffered as the result of a defendant's criminal conduct." *People v. Rivera*, 250 P.3d 1272, 1274 (Colo. App. 2010). The restitution statute recognizes that "victims endure undue suffering and hardship resulting from . . . emotional and psychological injury" and that "[p]ersons found guilty of causing such suffering and hardship should be under a moral and legal obligation to make full restitution to those harmed by their misconduct." § 18-1.3-601(1)(a), (b), C.R.S. 2019.

¶ 15    Restitution means "any pecuniary loss suffered by a victim [that is] proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2019. "Proximate cause in the context of restitution is defined as a cause which in natural and probable sequence produced the claimed injury and without which the claimed injury would not have been sustained." *Rivera*, 250 P.3d at 1274. "A defendant may not be ordered to pay restitution for losses that did not stem from the conduct that was the basis of the defendant's conviction." *Id.*

### D.    The District Court Lacked Authority to Order Restitution for Losses Caused by Conduct for Which Sosa Was Not Charged

#### 1.    We Extend *Cowen* to Prohibit Restitution for Losses Proximately Caused by Uncharged Conduct

¶ 16    The Colorado Supreme Court recently held that Colorado's restitution statutes do not allow a trial court to impose restitution for pecuniary losses caused by conduct that formed the basis of a charge of which the defendant has been acquitted. *Cowen*, ¶ 2. We conclude that the court's rationale is easily extended to preclude imposition of restitution for pecuniary losses caused by conduct for which the defendant was never criminally charged.

¶ 17    In *Cowen,* the defendant wrote two bad checks to a truck repair shop, one for $9327.65 and another for $13,158.00. *Id.* at ¶ 3. He was charged with two counts of fraud by check — one count for each check — but was convicted only of the charge related to the first check. *Id.* at ¶ 5. The jury acquitted him of the charge related to the second check. *Id.*

¶ 18    Following a hearing, the trial court ordered the defendant to pay restitution of $22,485.65, the full amount of both checks. *Id.* at ¶ 6. The trial court acknowledged that the defendant had been acquitted of the charge related to the second check, but nonetheless found "by far more than a preponderance of the evidence" that the defendant had written both checks knowing he had insufficient funds to cover them. *Id.*

¶ 19    Relying on a long line of cases holding that a criminal conviction establishing a defendant's culpability is not required to impose restitution, *see, e.g. People v. Ortiz*, 2016 COA 58, ¶ 16, a division of the court of appeals affirmed the restitution order in an unpublished decision, reasoning that the restitution statutes define a victim in relation to a defendant's conduct, "not the charge of which the defendant was convicted." *Cowen,* ¶ 7 (quoting *People v.*

*Cowen,* slip op. at ¶ 8 (Colo. App. No. 14CA2354, Nov. 23, 2016) (not published pursuant to C.A.R. 35(e))). The division concluded that, if the underlying conduct proximately causes a victim's loss, restitution is appropriate. *See id.* Because the trial court found that the defendant's conduct proximately caused $22,485.65 in losses to the victim repair shop, the division upheld the restitution order. *See id.*

¶ 20     Based on its interpretation of Colorado's restitution statutes, however, the supreme court reversed. *Id.* at ¶ 42. The court first acknowledged the legislative declaration that all victims of crime "endure undue suffering and hardship" and that individuals "*found guilty* of causing such suffering and hardship should be under a moral and legal obligation to make full restitution to those harmed by their misconduct." § 18-1.3-601(1)(a), (b) (emphasis added); *Cowen,* ¶ 18. The court continued:

> Consistent with this proclamation, section 603 provides that "[e]very *order of conviction* of a felony, misdemeanor, petty, or traffic misdemeanor offense . . . shall include consideration of restitution." § 18-1.3-603(1), C.R.S. (2018) (emphasis added). As relevant here, section 602 defines "conviction" as "*a verdict of guilty* by a judge or jury or *a plea of guilty or nolo contendere* that is accepted by

8

the court for a felony, misdemeanor, petty offense, or traffic misdemeanor offense." § 18-1.3-602(2), C.R.S. (2018) (emphases added).

*Cowen*, ¶ 18. Reading these provisions together, the court concluded that "[t]he legislature clearly meant to limit restitution liability to individuals *found guilty* of causing injury or property loss that resulted in suffering or hardship to victims harmed by their misconduct." *Id.* at ¶ 19.

¶ 21 The court then considered the definitions of "restitution" — "any pecuniary loss suffered by a victim . . . proximately caused by an *offender's conduct* and that can be reasonably calculated and recompensed in money," § 18-1.3-602(3)(a) (emphasis added) — and "victim" — "any person aggrieved by the *conduct of an offender*," § 18-1.3-602(4)(a) (emphasis added). In each instance, the legislature tied the definition to the conduct of *an offender*.

¶ 22 Giving the word "offender" its plain and ordinary meaning in the definitions of "restitution" and "victim," the court concluded

> that the legislature did not intend to empower trial courts to order someone acquitted of a charge to pay restitution for losses caused by the conduct underlying that charge. When an individual is acquitted of a charge, he cannot be deemed an "offender" because he is by definition not a person who committed the

9

> crime charged. It follows that the conduct on which the charge was based cannot constitute the "conduct of an offender." Nor can the victim named in the acquitted charge be considered a person aggrieved by the "conduct of an offender."

*Cowen*, ¶ 21.

¶ 23 The court also rejected the People's proposed statutory construction in part because it raised due process concerns. The court confirmed "it is now axiomatic that the presumption of innocence applies to each crime charged" and that a defendant retains the presumption of innocence with respect to a charge for which he is acquitted regardless of whether he is found guilty of a different charge. *Id.* at ¶ 38.

> To hold otherwise would be tantamount to declaring that when the jury finds a defendant guilty of one charge and not guilty of another, the trial court may nevertheless consider the defendant guilty of the acquitted charge by a less demanding standard of proof. That would be nonsensical even in the context of restitution. Thus, we are convinced that, to comport with procedural due process, restitution must be prohibited for losses resulting from conduct of which a defendant has been acquitted and as to which he retains the presumption of innocence.

10

*Id.*; *cf. Nelson v. Colorado*, 581 U.S. ___, ___, 137 S. Ct. 1249, 1256 (2017) ("Colorado may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions.").

¶ 24    Although the supreme court declined to consider whether a restitution award may include losses caused by *uncharged* conduct, *Cowen*, ¶ 8 n.3, we conclude that its rationale can be extended to answer the question in the negative.

¶ 25    Again, restitution means "any pecuniary loss suffered by a victim" that was "proximately caused by an *offender's conduct*" and "can be reasonably calculated and recompensed in money."  § 18-1.3-602(3)(a) (emphasis added).  To be a victim for purposes of restitution, one must be "aggrieved by the *conduct of an offender.*"  § 18-1.3-602(4)(a) (emphasis added).

¶ 26    When an individual is not charged with a crime, she cannot be found guilty of (or plead guilty to) that crime.  She cannot be deemed an "offender" because she "is by definition not a person who committed the crime charged."  *See Cowen*, ¶ 21.  It follows that conduct for which an individual is never criminally charged cannot be deemed the "conduct of an offender," nor can any person be considered a victim as to that conduct.  *See id.*  Because a court

may only order restitution for losses "proximately caused by an offender's conduct," § 18-1.3-602(3)(a), no court may order restitution for losses proximately caused by conduct for which a person is not criminally charged.

¶ 27    This is so regardless of whether the individual was charged with and found guilty of a separate crime. Due process demands that she retain the presumption of innocence with respect to conduct for which she is not charged. *See Cowen,* ¶ 38. To hold otherwise would be tantamount to declaring that when a jury finds a defendant guilty of one charge, a trial court may find her guilty of any number of other uncharged crimes and by a less demanding standard of proof. That would be "nonsensical" in any context, including in the context of restitution. *See id.* Thus, we are convinced that, to comport with procedural due process, restitution must be prohibited for losses resulting from conduct for which an individual has not been criminally charged and as to which she retains the presumption of innocence.

¶ 28    Our holding today raises the following question: How does this rule apply to dismissed charges? Unlike uncharged conduct, a dismissed charge is based on conduct for which an individual has

12

been criminally charged. But like uncharged conduct, when a charged count is dismissed, an individual cannot be found guilty of (or plead guilty to) that crime. She cannot be deemed an "offender" as to the dismissed count, the conduct underlying the dismissed count cannot be deemed the "conduct of an offender," and no person can be considered a victim as to that conduct. *See id.* at ¶ 21. And she retains the presumption of innocence as to the dismissed count. *See id.* at ¶ 38. Thus, for the same reasons articulated above, no court may order restitution for losses proximately caused by conduct underlying a dismissed charge. Due process so requires.

¶ 29    To be clear, this holding does not prevent the prosecution and the defense from entering into a plea agreement pursuant to which dismissed or uncharged counts will be considered for purposes of restitution. *See People v. Borquez*, 814 P.2d 382, 384-85 (Colo. 1991) (approving restitution order based on uncharged offenses because "Borquez acknowledged her criminal conduct and the resulting pecuniary loss incurred by [the victim] in several written statements and defense counsel tacitly admitted that the plea agreement was based upon a series of thefts"); *People in Interest of*

*A.V.*, 2018 COA 138M (affirming restitution order based on dismissed counts where defendant "and his attorney signed the written plea agreement in which he stipulated to a factual basis and agreed to pay restitution to the victims of the dismissed counts").

¶ 30    We recognize that a defendant may receive the benefit of avoiding trial, pleading guilty to fewer or different offenses, and receiving a reduced sentence in exchange for making full restitution to those harmed by her conduct. Both sides ought to be free to leverage restitution as part of a fair disposition of the case. And when a defendant agrees to make restitution for losses stemming from uncharged conduct or dismissed counts, she is bound by that agreement. *See People v. Quinonez*, 735 P.2d 159, 164 (Colo. 1987) ("Where a defendant agrees to make restitution at the time of entering a plea, he cannot later disavow the agreement on the basis that there was no showing that he had caused the victim's injury."), *superseded by statute on other grounds as stated in Dubois v. People*, 211 P.3d 41 (Colo. 2009).

## 2. Sosa Cannot Be Ordered to Pay Restitution for Losses Proximately Caused by the Shooting

¶ 31    Sosa originally was charged with accessory to the crime of murder in the first or second degree. The complaint and information specifically alleged that

> [b]etween and including February 28, 2016 and March 7, 2016, Alicia Sheri Sosa unlawfully and feloniously rendered assistance to Timothy Trujillo, with intent to hinder, delay, or prevent the discovery, detection, apprehension, prosecution, conviction, or punishment of Timothy Trujillo for the commission of a crime, knowing that person committed the crime of Murder in the First or Second Degree, C.R.S. 18-3-102 or 18-3-103, a class 1 or 2 felony; in violation of section 18-8-105(1), (3), C.R.S.

To facilitate a plea, the prosecution added a second count of accessory to the crime of second degree murder heat of passion, which alleged that

> on or about the 28th day of February, A.D. 2016 through the 7th day of March, A.D. 2016, at the said County of Pueblo in the State of Colorado, ALICIA SHERI SOSA unlawfully and feloniously rendered assistance to Angelo Salas, with intent to hinder, delay, or prevent the discovery, detection, apprehension, prosecution, conviction, or punishment of Angelo Salas for the commission of a crime, knowing that person committed the crime of Second Degree Murder Heat of Passion, C.R.S.

15

> 18-3-103(1), (3)(b), a class 3, 4, or 5 felony; in violation of section 18-8-105(1), (5), C.R.S.
>
> The added count is necessary to facilitate the Plea Agreement reached by the parties.

Sosa pleaded guilty to the second count and the prosecution dismissed the first count.

¶ 32     "A person is an accessory to crime if, with intent to hinder, delay, or prevent the discovery, detection, apprehension, prosecution, conviction, or punishment of another for the commission of a crime, he renders assistance to such person." § 18-8-105(1), C.R.S. 2019; *see also* § 18-8-105(5) ("Being an accessory to crime is a class 5 felony if the offender knows that the person being assisted *has committed* . . . a crime . . . .") (emphasis added).  By its plain language, the offense of accessory describes conduct that occurs *after* some underlying crime has already been committed by another person.

¶ 33     Being an accessory to a crime is different from being a complicitor to a crime because "[w]hen codefendants are participants and complicitors in 'the same criminal acts,' each is responsible for the damage he or she caused and also for the damage caused by the other during the commission of the crime."

*People in Interest of D.I.*, 2015 COA 136, ¶ 15 (The obligation to pay restitution "may extend to complicitors, who are equally culpable for the underlying conduct of the offense."). Conversely, an accessory "renders aid" after the commission of a crime by another person; thus, the criminal conduct forming the basis of an accessory's conviction is not the same criminal conduct as that of the person who committed the underlying crime. It is a separate and distinct offense based on the accessory's own after-the-fact conduct.

¶ 34    Sosa was charged with and pleaded guilty to being an accessory to the crime of second degree murder heat of passion. By definition, the conduct for which Sosa was criminally charged was her assistance to Salas and Trujillo *after* the shooting. Sosa was an "offender" only as to the accessory crime. Consequently, the district court was authorized to order Sosa to pay restitution only for losses proximately caused by her conduct in rendering aid *after* the shooting.

¶ 35    Said another way, Sosa was not charged with and did not plead guilty to any crime based on conduct she engaged in before or as a participant in the shooting. Because she was not charged with

17

a crime based on such conduct, she has not been found guilty of, nor did she plead guilty to, a crime based on such conduct. And she cannot be deemed an "offender" as to any uncharged crime.

¶ 36    Consequently, the district court was not authorized to order Sosa to pay restitution for losses proximately caused by the shooting. To hold otherwise would allow the district court to find Sosa guilty of and punish her for an uncharged crime by a preponderance of the evidence, a result procedural due process cannot tolerate.

¶ 37    The restitution order included the shooting victims' medical bills and lost wages, the deceased's funeral costs and outstanding rent and utility bills, and travel expenses related to the deceased's funeral. These losses were proximately caused by the shooting, not by Sosa's conduct in delaying Salas's and Trujillo's arrests. These losses would have been sustained regardless of Sosa's involvement after the shooting. The district court was not authorized by the restitution statutes to include such losses in an order of restitution against Sosa. Accordingly, its order is erroneous as a matter of law and constitutes an abuse of discretion. We reverse the district court's restitution order and remand for further proceedings.

### 3. The Prosecution's Remaining Arguments are Unpersuasive

¶ 38 The prosecution argues that requiring Sosa to pay restitution for losses caused by conduct for which she was not criminally charged does not violate her right to procedural due process in this case because (1) the district court found that the losses were proximately caused by Sosa's conduct; and (2) Sosa "waive[d] any objection to proximate cause by agreeing to pay the victim's restitution on dismissed acts."

¶ 39 First, the prosecution asserts there is evidence in the record that Sosa assisted Salas and Trujillo on the day of the shooting by collecting a bag of guns from a codefendant's house. Thus, the prosecution argues there is evidence to support the district court's finding that Sosa's conduct proximately caused the pecuniary losses included in the restitution order. But the evidence cited by the prosecution does not support that contention. The shooting happened around 1 a.m. on February 28, 2016. The cited record evidence suggests Sosa assisted Salas and Trujillo later that same day (i.e., *after* the shooting) by collecting a bag of guns.

¶ 40 Even so, because Sosa failed to provide a transcript of the restitution hearing, we must presume that the record supports the

district court's proximate cause finding. *See People v. Wells*, 776 P.2d 386, 390 (Colo. 1989) ("The presumption is that material portions omitted from the record would support the judgment."). If a defendant intends to urge on appeal that a finding is not supported by the record or contrary to the evidence, she must include in the record a transcript of all evidence relevant to such finding. *People v. Duran*, 2015 COA 141, ¶ 12. So, we will not disturb the district court's finding of fact.

¶ 41    But even if the district court found (as a matter of fact by a preponderance of the evidence) that Sosa proximately caused the losses claimed as restitution by assisting Salas and Trujillo *before* or *during* the shooting, its order cannot stand as a matter of law because Sosa was not charged with (or convicted of) a crime based on such conduct.

¶ 42    Second, based on the plea agreement, the prosecution argues that Sosa agreed to "make restitution for the first degree murder." True, Sosa acknowledged she would "be ordered to pay restitution to the victim(s) of his/her conduct" and agreed that any "[d]ismissed counts will be considered for sentencing and restitution purposes," but the dismissed count was accessory to first or second degree

20

murder. It was still an *accessory* charge and, by definition, involved conduct occurring *after* the shooting. Sosa was never charged with murder, so she did not agree to pay restitution proximately caused by the murder. The plea agreement in this case does not support the district court's restitution award.

## III. Conclusion

¶ 43 We reverse the restitution order as to Sosa and remand the case to the district court to determine what losses, if any, were proximately caused by the conduct for which Sosa was charged — accessory to first or second degree murder or accessory to second degree murder heat of passion.

JUDGE FURMAN and JUDGE DAVIDSON concur.