23CA0297 Peo v Walker 10-23-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0297
El Paso County District Court No. 22CR66
Honorable Laura N. Findorff, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Rahkaela Walker,

Defendant-Appellant.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE HARRIS
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 23, 2025

---

Philip J. Weiser, Attorney General, Joshua J. Luna, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Lisa Weisz, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Rahkaela Walker, appeals the restitution order entered after she pleaded guilty to stalking her former therapist. She contends that the order was entered after the statutory deadline and improperly requires her to pay restitution for losses caused by uncharged conduct. We reject both contentions and therefore affirm.

## I.     Background

¶ 2     Walker began her stalking conduct in September 2021, when the victim terminated their therapist-patient relationship. On receiving the news, Walker showed up at the victim's office and refused to leave until the victim called the police.

¶ 3     For the next two months, Walker repeatedly called, texted, and emailed the victim. During one weekend in November, Walker called the victim forty-five times and left twenty-three voicemail messages. She told the victim that she "won't stop, she will keep calling, she'll keep changing her number." The victim felt that "there was no stopping [Walker's] behavior."

¶ 4     In November, the victim obtained a temporary protection order. A few weeks later, Walker attempted to contact the victim at the victim's church; when she could not find the victim, she left a

handwritten note for her.  Walker also messaged the victim over Venmo and contacted the victim's colleagues.

¶ 5    In January 2022, the district attorney charged Walker with two counts of stalking and one count of violation of a protection order.  The criminal complaint alleged that the unlawful conduct occurred between September 28 and December 14, 2021.

¶ 6    Despite the protection order, Walker continued to call and text the victim.  In February, the prosecution filed a second case, charging Walker with violating the protection order on January 25, 2022.

¶ 7    Walker pleaded guilty under a plea agreement to one count of stalking causing serious emotional distress; in exchange, the prosecution dismissed the remaining charges in both cases and stipulated to a deferred judgment and sentence.  The plea agreement required Walker to "pay restitution for all counts and cases governed by th[e] plea agreement, including [dismissed] counts and/or cases" and to "stipulate to causation for restitution purposes."

¶ 8    At the restitution hearing, the victim testified that Walker's stalking conduct caused her to experience anxiety, panic attacks,

difficulty concentrating, difficulty managing her time, nightmares, and flashbacks. She said that she had missed work due to the emotional distress, and she requested restitution for the lost income. The evidence showed that the victim missed forty-eight hours of work between September 2021 and January 25, 2022, the period of the charged conduct, and missed another twenty-three hours of work between January 26 and May 12, 2022.

¶ 9 Defense counsel argued that because the trial court could not order restitution for uncharged conduct, Walker was not liable for the victim's lost income after January 25, the last date of charged conduct. The court rejected that argument and ordered Walker to pay restitution to the victim in the amount of $77 per hour of missed work.

## II. Challenges to the Restitution Order

### A. Timeliness of the Order

¶ 10 Walker argues that the restitution order must be vacated because the court lacked authority to enter it after the statutory deadline passed. We conclude that Walker waived her right to a timely order.

3

¶ 11    Every judgment of conviction in a felony case, including a deferred judgment, *see* § 18-1.3-602(2), C.R.S. 2025, must include an order resolving liability for restitution, § 18-1.3-603(1), C.R.S. 2025.  The court may defer fixing the amount of restitution, but a final order must ordinarily be entered within ninety-one days of the sentencing date.  *See* § 18-1.3-603(1)(b), C.R.S. 2022;[1] *People v. Weeks*, 2021 CO 75, ¶ 39.

¶ 12    Because the statutory deadline is not jurisdictional, however, it can be waived.  *Babcock v. People*, 2025 CO 26, ¶ 27.  One way a defendant can waive her right to a timely determination of restitution is by requesting "that a restitution hearing be set after the ninety-one-day deadline would expire."  *Id.* at ¶ 30.

¶ 13    Walker's sentencing hearing occurred on July 13, 2022, meaning that, under section 18-1.3-603(1)(b), C.R.S. 2022, the court had to enter an order fixing the amount of restitution by October 12, 2022.  In August, the prosecution submitted a proposed restitution order, and Walker objected and requested a

---

[1] The restitution statute's deadlines were amended in 2025, but those amendments apply to "defendants sentenced on or after" May 30, 2025.  *See* Ch. 307, sec. 1, § 18-1.3-603, 2025 Colo. Sess. Laws 1606-07.

hearing. On September 21, the parties appeared for a scheduling conference. Walker's lawyer requested that the restitution hearing be scheduled for October 19 at the earliest — a week after the statutory deadline. The court and parties ultimately settled on November 16.

¶ 14 At the November 16 hearing, the prosecutor raised the fact that the statutory deadline had expired. The court noted that the restitution hearing was set "by agreement of the parties" and asked defense counsel if she "want[ed] to make a further record." Defense counsel replied, "I do not."

¶ 15 On January 5, 2023, the court entered a restitution order requiring Walker to pay $5,965.24 in restitution, including $3,869.34 to the victim.[2]

¶ 16 We conclude that Walker waived any claim concerning the timeliness of the restitution order when her counsel requested a hearing date after the ninety-one-day deadline, *see Babcock*, ¶ 30, and then confirmed her acquiescence to the delay on the first day of

---

[2] The court awarded the victim $5,467 for seventy-one hours of missed work, plus approximately $156 in interest, minus $1,754.23 that the Victim's Compensation Board had already paid the victim.

the hearing. *See People v. Roberson*, 2025 CO 30, ¶ 17 (counsel's acceptance of a restitution hearing date after the deadline constituted a waiver); *see also People v. Yakas*, 2019 COA 117, ¶ 35 ("[C]ounsel may waive a defendant's statutory rights and such a waiver must only be voluntary, not knowing or intelligent."); *Babcock*, ¶ 30 (same).

### B.    Amount of Restitution

¶ 17    Walker also challenges the imposition of restitution that she says is attributable to uncharged conduct.

¶ 18    As noted, the victim missed twenty-three hours of work after the date of the last charged conduct:

- On January 26, 2022, Walker called the victim from a hospital, in violation of the protection order, and demanded that the victim effectuate her release. The calls left the victim feeling traumatized and anxious, and she canceled her client sessions for the day.

- On February 22, March 14, and April 25, 2022, Walker texted the victim in violation of the protection order. The victim viewed the texts as an indication that Walker did not intend to stop contacting her despite the protection order. She worried

that Walker might come to her office. On each of those days, the victim canceled four hours of client sessions.

- On May 12, 2022, a different therapist called the victim to request Walker's mental health records. The victim was fearful that Walker would retaliate against her for sending the records. She canceled four hours of client sessions that day.

¶ 19 Walker says that because she was not charged with any criminal conduct *on those dates*, she cannot be ordered to pay the victim's lost wages for those canceled appointments. We disagree.

¶ 20 A trial court must order restitution for "any pecuniary loss suffered by a victim . . . proximately caused by an offender's conduct." § 18-1.3-602(3)(a); § 18-1.3-603, C.R.S. 2025. An "offender" is "a person who committed the crime charged." *Cowen v. People*, 2018 CO 96, ¶ 21. Thus, unless the defendant agrees otherwise, a trial court may not award restitution for damages arising from criminal conduct for which the defendant was never criminally charged. *People v. Sosa*, 2019 COA 182, ¶¶ 26, 29.

¶ 21 But the fact that Walker is not an offender for purposes of the conduct that occurred after January 25 is irrelevant in this case. Restitution was not ordered based on the uncharged conduct.

Rather, the trial court found that Walker's stalking conduct *during the time period charged* in the two cases proximately caused the victim's post-January 25 pecuniary losses.

¶ 22    "Proximate cause is any 'cause which in natural and probable sequence produced the claimed injury.'" *Martinez v. People*, 2024 CO 6M, ¶ 13 (quoting *People v. Stewart*, 55 P.3d 107, 116 (Colo. 2002)).  If the defendant's conduct is the proximate cause of the victim's lost wages, the defendant can be ordered to pay restitution in the amount of "wages not received by the victim from the date the crime was committed to the date restitution is imposed." *People v. Bryant*, 122 P.3d 1026, 1029 (Colo. App. 2005).

¶ 23    Whether the defendant proximately caused the victim's loss is a question of fact, and, therefore, we review the court's determination of proximate cause under the highly deferential clear error standard.  *Martinez*, ¶ 32.  Under that standard, "we must affirm the [trial] court's findings unless they are without 'support in the record.'" *Id.* at ¶ 34 (quoting *People v. Turner*, 2022 CO 50, ¶ 19).

¶ 24    The trial court acknowledged that "uncharged conduct cannot be a basis for restitution."  But it found that Walker's "ongoing

actions," including her "stalking behaviors" during the period of the charged conduct, resulted in the canceled appointments and therefore proximately caused the victim's pecuniary loss. That finding is supported by the evidence.

¶ 25    Walker admitted that her charged conduct caused serious emotional distress to the victim. The victim confirmed this during her testimony. She testified that Walker's stalking conduct "affected every aspect of [her] life." The victim explained that because Walker's behavior was unpredictable and frightening, she was "constantly hypervigilant," anxious, and "destabilize[d]." She said that at certain times she was unable to work with her clients because she was "activated" and "overwhelmed."

¶ 26    The victim specifically attributed her inability to work during the listed hours in 2022 to Walker's entire "course of conduct." She affirmed that, "absent [Walker's] conduct in 2021," she would not have "had the responses that [she] had in 2022" and would not have "made the decisions that [she] did with regard to client hours."

¶ 27    Walker does not argue that the victim's post-January 25, 2022, losses are too attenuated from the 2021 criminal conduct. For good reason, in our view — not only did Walker stipulate to

proximate cause but, as the trial court noted, Walker's theory that after five months of unpredictable stalking behavior, the victim's severe emotional distress would end abruptly on January 25 is unrealistic and somewhat disingenuous.

¶ 28 Because the trial court's proximate cause findings are supported by the record, we discern no error in the restitution order.

## III. Disposition

¶ 29 The order is affirmed.

JUDGE JOHNSON and JUDGE SCHOCK concur.