The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY

January 30, 2025

**2025COA9**

**No. 22CA0606, *People v. Ragsdal* — Crimes — Second Degree**

**Burglary — Theft; Criminal Law — Sentencing — Restitution**

In this criminal case, the defendant appeals his convictions for

burglary and theft and the associated restitution order.  The

defendant was charged with and convicted of burglary and theft of

$50 or more but less than $300 based on allegations that he

unlawfully entered the victim's home and stole multiple sets of

keys.  Although the level of theft the defendant was charged with

and convicted of had an upper bound of $300, the evidence

presented at trial and the restitution hearing established that the

victim's losses resulting from the theft exceeded $500.  Based on

that evidence, the trial court imposed the full amount of the

restitution that the People sought.

On appeal, the defendant contends the court erred by imposing restitution in excess of the upper monetary limit of the theft statute he was charged under and convicted of violating. Citing *Cowen v. People*, 2018 CO 96, and *People v. Sosa*, 2019 COA 182, the defendant contends that by imposing restitution for theft in excess of the upper bound of the theft statute of conviction, the court abused its discretion. Recognizing that a court can't impose restitution based on acquitted conduct, *Cowen*, ¶ 24, or uncharged conduct, *Sosa*, ¶ 26, a division of the court of appeals rejects the contention that imposing restitution for theft in excess of the upper monetary bound of the charged and convicted level of offense violates either principle. Instead, the division concludes that restitution for theft is governed by the same principles that apply to any other request for restitution; that is, restitution is imposed in favor of a crime victim for all out-of-pocket expenses proximately caused by the criminal conduct for which the offender was convicted, even if that conduct would have supported charging a higher-level offense.

Because the division concludes that the record supports the trial court's restitution award and because it also rejects the

defendant's challenge to the trial court's denial of his counsel's request for a mistrial, the division affirms the trial court's judgment of conviction and restitution order.

COLORADO COURT OF APPEALS                                    **2025COA9**

Court of Appeals No. 22CA0606
Mesa County District Court No. 21CR496
Honorable Matthew D. Barrett, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Casey B. Ragsdal,

Defendant-Appellant.

JUDGMENT AND ORDER AFFIRMED

Division I
Opinion by JUDGE WELLING
J. Jones and Schock, JJ., concur

Announced January 30, 2025

Philip J. Weiser, Attorney General, Cata A. Cuneo, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

Cynthia A. Harvey, Alternate Defense Counsel, Aurora, Colorado, for Defendant-Appellant

¶ 1    Defendant, Casey B. Ragsdal, appeals his convictions for burglary and theft and the associated restitution order.  Ragsdal was charged with and convicted of burglary and theft of $50 or more but less than $300 based on allegations that he unlawfully entered the victim's home and stole the keys to two vehicles and a shed.  Although the level of theft he was charged with and convicted of had an upper bound of $300, the evidence presented at trial and the restitution hearing established that the victim's losses resulting from the theft exceeded $500.  Based on that evidence, the trial court imposed the full amount of the restitution that the People sought.

¶ 2    On appeal, Ragsdal contends that the court erred by imposing restitution in excess of the upper monetary limit of the theft statute he was charged under and convicted of violating.  Citing *Cowen v. People*, 2018 CO 96, and *People v. Sosa*, 2019 COA 182, he argues that, by imposing restitution for theft in excess of the upper bound of the theft statute of conviction, the court abused its discretion.  While it's true that a court can't impose restitution based on acquitted conduct, *Cowen*, ¶ 24, or uncharged conduct, *Sosa*, ¶ 26, we reject Ragsdal's contention that imposing restitution for theft in

excess of the upper monetary bound of the charged and convicted level of offense violates either principle. Instead, restitution for theft is governed by the same principles that apply to any other request for restitution; that is, restitution is imposed in favor of a crime victim for "*all* out-of-pocket expenses . . . proximately caused *by an offender's conduct*," § 18-1.3-602(3)(a), C.R.S. 2024 (emphases added), even if that conduct would have supported charging a higher-level offense. Because we conclude the record supports the conclusion that the theft Ragsdal was charged with and convicted of proximately caused losses commensurate with the restitution imposed by the court, we won't disturb the court's restitution order.

¶ 3     And because we also reject Ragsdal's challenge to the trial court's denial of his request for a mistrial, we affirm the trial court's judgment of conviction.

## I.     Background

¶ 4     Early in the morning on April 1, 2021, R.K. woke up to his alarm clock and heard creaking from the floorboards above his basement bedroom. R.K. didn't think it was his roommate because the sound was too quiet. Before heading upstairs to investigate the sound, R.K. grabbed his handgun.

¶ 5    Once he got upstairs, R.K. saw Ragsdal — a stranger — sitting in his living room.  R.K. asked Ragsdal who he was, and Ragsdal replied, "I'm Casey."  When R.K. asked Ragsdal why he was in his house, Ragsdal answered that it was cold outside.  R.K. pointed the gun at Ragsdal and told him to leave.  Ragsdal complied, and R.K. immediately called the police.

¶ 6    Shortly after calling the police, R.K. heard the alarm on his truck go off.  When R.K. went to look for his truck keys on the key ring by his front door, he noticed that the key fobs for both his Lexus and Ford F-150 were missing, as were four keys to a shed on his property.  Police arrived shortly thereafter.

¶ 7    A few hours later when R.K. left for work, he saw Ragsdal in the alley behind his house near his two sheds.  R.K. again called the police and followed Ragsdal to a nearby bus stop.  At the bus stop, police contacted Ragsdal, R.K. identified him as the man who had broken into his home, and the police arrested Ragsdal.  When the police searched Ragsdal, they didn't find any keys on his person.

¶ 8    The People charged Ragsdal with second degree burglary in violation of section 18-4-203(1) and (2)(a), C.R.S. 2020, a class 3

felony,[1] and theft of $50 or more but less than $300 in violation of section 18-4-401(1), (2)(c), and (6), C.R.S. 2020, a class 3 misdemeanor,[2] predicated on the missing car, truck, and shed keys.

¶ 9    Before trial, Ragsdal's counsel endorsed choice-of-evils as an affirmative defense, and during voir dire, the court indicated that Ragsdal would be pursuing a choice-of-evils defense. Shortly before opening statements, however, the prosecutor challenged whether Ragsdal had a sufficient evidentiary basis to pursue such a defense. The court asked defense counsel to make an offer of proof in support of pursuing choice-of-evils. After providing defense counsel with multiple opportunities to present an offer of proof, the trial court ruled that the defense hadn't presented an adequate basis for pursuing the choice-of-evils defense at trial. Following the court's ruling prohibiting Ragsdal from asserting a choice-of-evils defense, defense counsel moved for a mistrial based on "ineffective

---

[1] At the time that Ragsdal entered R.K.'s home, the 2020 version of the burglary statute was in effect, and because the statute has since been amended, this opinion applies the 2020 version. *See* Ch. 298, sec. 10, § 18-4-203(2)(a), 2023 Colo. Sess. Laws 1784-85.
[2] At the time Ragsdal removed the keys from R.K.'s home, the 2020 version of the theft statute was in effect. Because the statute has since been amended, we apply the 2020 version. *See* Ch. 462, sec. 205, § 18-4-401(2)(b)-(c), 2021 Colo. Sess. Laws 3176-77.

assistance of counsel," arguing that he wasn't adequately prepared to present the requisite offer of proof and needed more time to investigate the factual basis for asserting a choice-of-evils defense. The court denied counsel's motion for a mistrial.

¶ 10    The jury convicted Ragsdal of both charges.  Following the jury trial, the People filed a request for restitution, to which Ragsdal objected and requested a hearing.  The court conducted a restitution hearing and based on the evidence presented at that hearing ordered Ragsdal to pay $501.92 in restitution.

## II.    Analysis

¶ 11    On appeal, Ragsdal contends that the trial court erred by (1) denying his motion for a mistrial due to his counsel's unpreparedness and (2) ordering restitution in excess of the upper bound of the theft statute he was charged under and convicted of violating.  We aren't persuaded that the court erred in either regard.

### A.    The Trial Court Didn't Err by Denying Ragsdal's Motion for a Mistrial

¶ 12    Ragsdal first contends that the trial court erred by denying his motion for a mistrial after defense counsel alerted the court that he wasn't prepared to present the requisite offer of proof to proceed

with a choice-of-evils affirmative defense. We disagree that the trial court erred.

### 1. Additional Facts

¶ 13 Before trial, Ragsdal's counsel endorsed a choice-of-evils affirmative defense, contending that the cold weather justified Ragsdal's unlawful entry into R.K.'s home. On the first day of trial, during voir dire, the court told the prospective jurors that Ragsdal "has pleaded not guilty, asserting the defense of choice of evils."

¶ 14 Later that day, outside the jury's presence and before the jurors had been sworn, the prosecutor requested an offer of proof from Ragsdal's counsel to support pursuing the choice-of-evils affirmative defense at trial. The prosecutor said she believed that Ragsdal predicated his theory of defense solely on the fact that it was cold on the day in question and that, under *Andrews v. People*, 800 P.2d 607, 610 (Colo. 1990), Ragsdal needed to also proffer that "all other potentially viable and reasonable alternative actions were pursued, or shown to be futile" before the jury could be instructed on the choice-of-evils defense. Ragsdal's counsel responded that the statute didn't require this proffer and that he had "missed the

first prong" of what *Andrews* requires for a sufficient choice-of-evils offer of proof.

¶ 15     The trial court gave defense counsel two opportunities to confer with Ragsdal to see whether he could gather the information necessary to provide an adequate offer of proof to support a choice-of-evils defense.  In the first instance, counsel briefly went off the record and then argued to the court that Ragsdal was new to the area, he was unaware of the resources available to him, and it was too early in the morning for him to seek refuge at a public library when he entered R.K.'s home.  Counsel offered that, if given more time, the defense would call Ragsdal's mother to corroborate this account of events.  In reply, the court said it didn't completely understand counsel's offer of proof and asked Ragsdal to talk to his counsel, so he could provide the court with more information.  Counsel then asked the court for additional time to confer with Ragsdal and spoke with Ragsdal off the record for twelve minutes.  When counsel came back on the record after conferring with Ragsdal, he didn't offer any additional information to the court and, instead, moved for a mistrial.

¶ 16    During argument on defense counsel's motion for a mistrial, the court asked defense counsel whether he was prepared to go to trial without the choice-of-evils defense. Counsel responded, "If I don't have access to that defense, I can still run the trial . . . on Mr. Ragsdal's behalf[] and present a fairly strong defense to the two main charges."[3]

¶ 17    The trial court denied Ragsdal's motion for a mistrial, reasoning that defense counsel (1) would be effective in this case because counsel had said that he was "prepared to go to trial and argue things in the absence of that choice of evils defense"; (2) hadn't provided the court with a "reason to believe anything would change in terms of [his] trial preparation or arguments [he] would make" if given more time; and (3) hadn't indicated or given

---

[3] The People also charged Ragsdal with the lesser included offense of first degree criminal trespass. In his colloquy with the court, defense counsel maintained that the lack of a choice-of-evils defense would leave him without "much of anything" to defend against the criminal trespass charge. In other words, counsel's primary concern regarding the lack of a choice-of-evils defense related to his ability to defend against trespass, not burglary or theft. And because the jury returned a guilty verdict for burglary in the second degree, the jury didn't reach a verdict on the lesser included trespass charge.

the court a reason to believe "that any of the offer of proof would be different in the future."

¶ 18     The trial court, however, also told Ragsdal's counsel that, "if you talk to [Ragsdal] this evening . . . and he gives you all sorts of new information that you didn't previously explore, that you think I need to know in order to revisit this decision, you're welcome to bring it up to me."  Defense counsel never brought anything further on the choice-of-evils defense to the court's attention.

### 2.     Applicable Legal Principles and Standard of Review

¶ 19     The choice-of-evils defense is a statutory affirmative defense under which a defendant's otherwise criminal conduct

> is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no conduct of the actor, and which is of sufficient gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

§ 18-1-702(1), C.R.S. 2024.  In short, "[t]he choice of evils statute requires that the defendant establish that the crime committed was

9

*necessary* to prevent an imminent injury." *Andrews*, 800 P.2d at 610. Before a defendant may present a choice-of-evils defense, "the court shall first rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification." § 18-1-702(2). For the choice-of-evils affirmative defense to move forward, a defendant must establish in an offer of proof that

> (1) all other potentially viable and reasonable alternative actions were pursued [by the defendant], or shown to be futile, (2) the action taken had a direct causal connection with the harm sought to be prevented, and that the action taken would bring about the abatement of the harm, and, (3) the action taken was an emergency measure pursued to avoid a specific, definite, and imminent injury about to occur.

*Andrews*, 800 P.2d at 610 (footnotes omitted).

¶ 20    "A mistrial is a drastic remedy and is warranted only when prejudice to the accused is so substantial that its effect on the jury cannot be remedied by other means." *People v. Johnson*, 2017 COA 11, ¶ 40. The decision whether to grant a mistrial is within the sound discretion of the trial court. *People v. Ned*, 923 P.2d 271, 274 (Colo. App. 1996). Accordingly, we review a trial court's denial of a motion for a mistrial for an abuse of discretion. *Johnson*, ¶ 39.

10

A court abuses its discretion if the court's decision is "manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law." *People v. Houser*, 2013 COA 11, ¶ 57 (quoting *People v. Orozco*, 210 P.3d 472, 475 (Colo. App. 2009)). "[A]bsent an abuse of discretion, the trial court's denial of a motion for mistrial will not be disturbed on review." *Ned*, 923 P.2d at 274.[4]

### 3. Application

¶ 21 We disagree with Ragsdal that the trial court abused its discretion by denying his counsel's motion for a mistrial.

¶ 22 To move forward with the choice-of-evils defense, defense counsel needed to offer the court facts sufficient to support a finding by reasonable jurors that Ragsdal had a justification for unlawfully entering R.K.'s home, including the fact that Ragsdal had pursued "all other potentially viable and reasonable alternative

---

[4] The parties dispute what standard of reversal applies in the event we conclude that the trial court erred by denying Ragsdal's motion for a mistrial. Ragsdal argues that the error is one of constitutional dimension and thus constitutional harmless error applies. The People contend that the nonconstitutional harmless error standard applies. Because we discern no error, we don't need to resolve this dispute. *See People v. Douglas*, 2015 COA 155, ¶ 59.

actions." *Andrews*, 800 P.2d at 610. After defense counsel conferred with Ragsdal — the person who presumably would be in the best position to know what alternatives he pursued in advance of unlawfully entering R.K.'s home — defense counsel couldn't identify any additional alternative actions Ragsdal took before entering R.K.'s home or, besides Ragsdal's mother, any additional witnesses he would call, much less what these additional witnesses would say, if the court provided additional time for investigation. Based on the information counsel provided, the court didn't have any reason to believe that additional time would yield the information needed to pursue the defense. Thus, the court didn't abuse its discretion by denying the motion for a mistrial.

¶ 23    Furthermore, when the court asked defense counsel whether he was prepared to go to trial without the choice-of-evils defense, counsel conceded that he was, at least with respect to the burglary and theft charges. Based on this representation, the trial court found that Ragsdal's counsel "can be effective in this case." Such a finding was reasonable.

¶ 24    Finally, the court encouraged defense counsel to bring to the court's attention any additional information that came to light to

12

support the choice-of-evils defense. From the record before us, it doesn't appear that defense counsel brought any additional information to the court's attention on this point.

¶ 25 Accordingly, the trial court didn't abuse its discretion by denying Ragsdal's counsel's motion for a mistrial.

### B. The Trial Court's Restitution Order Doesn't Include Amounts for "Uncharged Conduct"

¶ 26 Ragsdal next contends that the trial court erred by imposing restitution "for uncharged conduct." Invoking the reasoning of *Cowen* and *Sosa,* Ragsdal argues that the trial court's restitution order for $501.92 includes amounts for "uncharged conduct" because he was only charged with and found guilty of theft of $50 or more but less than $300 under section 18-4-401(2)(c). The trial court didn't err.

#### 1. Additional Facts

¶ 27 R.K. was the only witness who testified at the restitution hearing. R.K. testified that he couldn't replace the missing shed keys without also replacing the locks and that he had spent $51.92 on the four new sets of locks and keys for his sheds. R.K. also testified that he received an estimate that it would cost $150 to

replace the ignition key for the Ford F-150 and another estimate that the Lexus remote wireless start key would cost closer to $300 to replace. And R.K. testified that when Ragsdal unlawfully entered his home and the keys subsequently went missing, he wasn't aware how expensive the Lexus key was to replace and, at the time he reported the crime, he had only provided police with his best estimate of the cost.

¶ 28    At the conclusion of the hearing, the People requested restitution in the amount of $501.92, the total cost for R.K. to replace all his missing keys and change the locks on his two sheds. Ragsdal's counsel objected to this amount, resting on the record before the court. After considering the evidence presented during the hearing and the purpose of the restitution statute, the court ordered restitution in the amount of $501.92.

2.    Applicable Legal Principles and Standard of Review

¶ 29    As mentioned, restitution is "any pecuniary loss suffered by a victim" that "includes but is not limited to *all* out-of-pocket expenses . . . proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a) (emphasis added). The purpose of the restitution

14

statute is to make the victim whole by placing the victim in the same financial position that he was in before the defendant's unlawful conduct. *People v. Perez*, 2017 COA 52M, ¶ 19. "[R]estitution is not limited by the jury's findings but includes the pecuniary loss suffered by the victim including, but not limited to, *all* out-of-pocket expenses and other losses or injuries proximately caused by an offender's conduct." *People v. Smith*, 181 P.3d 324, 327 (Colo. App. 2007) (emphasis added).

¶ 30     Restitution may not, however, be awarded for uncharged conduct, *Sosa*, ¶ 26, or "for pecuniary losses caused by acquitted conduct," *Cowen*, ¶ 24.

¶ 31     We review a trial court's restitution order for an abuse of discretion. *Sosa*, ¶ 10.

### 3.     Application

¶ 32     Citing *Cowen* and *Sosa*, Ragsdal contends that a restitution order in an amount in excess of $300 — the maximum value of the stolen property under the provision of the theft statute that he was charged with and found guilty of — penalizes him for uncharged conduct. But neither *Cowen* nor *Sosa* supports Ragsdal's contention that the trial court erred or that his restitution exposure

15

must be commensurate with, or is capped by, the provision of the theft statute he was charged and convicted under.

¶ 33     In *Cowen*, the defendant wrote two checks drawn on his business checking account; one check was for $9,327.65 (the first check), and the other check was for $13,158.00 (the second check). *Id.* at ¶ 3.  He wrote these checks knowing that the funds in his business checking account were insufficient to cover either one.  *Id.* After both checks bounced, the People charged Cowen with two counts of fraud by check — one count for each check.  *Id.* at ¶ 5.  A jury convicted Cowen of the charge related to the first check but acquitted him of the charge related to the second check.  *Id.*  At sentencing, the People requested restitution in the amount of $22,485.65 — the total amount of *both* checks.  *Id.* at ¶ 6.  Cowen objected to any restitution for loss resulting from the second check because he had been acquitted of the charge related to that check. *Id.*  After a hearing, the trial court granted the People's requested restitution.  *Id.*

¶ 34     Cowen appealed, and a division of this court affirmed the trial court's restitution order, reasoning that, under the restitution statute, a defendant could be liable for any underlying conduct that

16

proximately caused a victim's loss, regardless of whether the defendant had been convicted of a crime as it related to that conduct. *Id.* at ¶ 7. The supreme court, however, reversed, holding that the restitution statute doesn't allow a court to impose restitution for acquitted conduct. *Id.* at ¶ 41.

¶ 35    Unlike the defendant in *Cowen*, Ragsdal wasn't ordered to pay restitution for acquitted conduct. The People only charged Ragsdal with theft of $50 or more but less than $300, *see* § 18-4-401(2)(c), and the jury convicted Ragsdal on this charge. The People didn't charge Ragsdal with theft of a greater amount (though, based on the evidence presented at the restitution hearing, it appears they could have). Had Ragsdal been charged with and *acquitted of* a theft charge for an amount greater than $300, *Cowen* could support Ragsdal's argument that the restitution order in excess of $300 was an abuse of discretion. But Ragsdal wasn't acquitted of a charge for theft of an amount greater than $300 because the People never pursued other higher-level theft charges. And Ragsdal points to nothing in the record suggesting that the jury rejected the evidence that Ragsdale stole the items that form the basis for the court's

17

restitution order. Simply put, *Cowen* doesn't support Ragsdal's contention.

¶ 36    Ragsdal's reliance on *Sosa* doesn't fare any better. In *Sosa,* the defendant's boyfriend and his friend shot and killed a man and injured two others in a drive-by shooting. *Sosa,* ¶ 2. During an investigation into the incident, Sosa admitted that she had helped her boyfriend and his friend evade arrest after the shooting. *Id.* at ¶ 4. The People charged Sosa with one count of accessory after-the-fact to the crime of first or second degree murder. *Id.* at ¶ 5. Pursuant to a plea agreement, Sosa pleaded guilty to an added count of accessory after-the-fact to second degree murder – heat of passion, and the People dismissed the original count. *Id.* As part of her plea agreement, Sosa acknowledged that the dismissed accessory count would be considered for sentencing and restitution purposes, but, in her plea agreement, Sosa never stipulated to restitution liability as a principal actor. *See id.* at ¶ 42.

¶ 37    At sentencing, the People requested that Sosa pay nearly $30,000 in restitution and that she be held jointly and severally liable for the restitution with her codefendants. *Id.* at ¶ 6. The restitution order included expenses associated with the homicide

18

victim's death and assault victims' injuries, all of which resulted from the drive-by shooting. *Id.* at ¶ 37. Those expenses included an assault victim's medical bills and lost wages, the deceased's funeral costs and outstanding rent and utility bills, and travel expenses incurred by the deceased victim's family to attend his funeral. *Id.*

¶ 38    Sosa appealed the restitution order and a division of this court, relying on *Cowen*, reversed. *Sosa,* ¶ 43. The *Sosa* division reasoned that Sosa wasn't ever charged as a principal to the crime, or with assisting her codefendants before or during the crime, and, therefore, Sosa couldn't be liable for any pecuniary losses the victims had suffered as a result of the shooting itself because "[t]hese losses would have been sustained regardless of Sosa's involvement after the shooting." *Id.* at ¶ 37. The division, relying on the reasoning of *Cowen* as noted, concluded that it was therefore an abuse of discretion for the trial court to order restitution for

uncharged conduct[5] and that such a practice runs afoul of procedural due process principles. *Sosa,* ¶¶ 26, 36-37.

¶ 39     *Sosa* doesn't support Ragsdal's contention that the trial court here imposed restitution for uncharged conduct. The pecuniary losses included in the restitution order are directly related to the unlawful conduct underlying Ragsdal's charges and convictions — namely, the theft of the keys from R.K.'s home. In *Sosa,* the death and injuries that were the basis for the court's restitution order weren't caused by any conduct that Sosa was charged with committing. Here, though, had Ragsdal not stolen the keys, R.K. wouldn't have needed to replace them or his shed locks. Put another way, that Ragsdal may have been, in retrospect, *under*charged, doesn't make any of the conduct that underlies the court's restitution order *un*charged.

---

[5] Nothing in *People v. Sosa,* 2019 COA 182, contravenes or abrogates the principle that a defendant can enter into a plea agreement stipulating that dismissed or uncharged counts will be considered in determining restitution. *See id.* at ¶ 29 ("To be clear, this holding does not prevent the prosecution and the defense from entering into a plea agreement pursuant to which dismissed or uncharged counts will be considered for purposes of restitution.").

¶ 40    Cutting to the chase, Ragsdal invites us to adopt a bright line rule when it comes to restitution for theft (or any other crime where the level of offense is defined in terms of monetary value) under which the upper bound of the monetary range for the charged level of the offense caps the restitution amount. We decline Ragsdal's invitation, as such a rule finds no grounding in the restitution statute or our case law.

¶ 41    Restitution for theft is subject to the same principles as any other restitution order. As mentioned, the restitution statute provides that restitution means "any pecuniary loss suffered by a victim and includes but is not limited to all out-of-pocket expenses . . . proximately caused *by an offender's conduct* and that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a) (emphasis added); *see also Smith*, 181 P.3d at 327 ("Section 18-1.3-205 states that 'the court shall order that the defendant make *full restitution*,' and this includes the victim's pecuniary losses and all out-of-pocket expenses."). The statute focuses on a defendant's criminal conduct — which here is the theft. And *Cowen* and *Sosa* limit the reach of the restitution statute to ensure that restitution isn't imposed for acquitted conduct or

21

uncharged conduct. But charging a defendant with a lower-level theft count than the evidence ultimately supports isn't a basis for capping a restitution award if the record establishes that the same criminal conduct that supports the defendant's charge and conviction proximately caused losses in excess of that amount.

¶ 42    The evidence presented at Ragsdal's restitution hearing supports that, to make R.K. whole, an appropriate restitution order needed to exceed $300, and the trial court acted well within its discretion by ordering restitution that fully recompensed R.K. for the pecuniary losses he suffered as a result of the criminal conduct for which Ragsdal was charged and convicted. The trial court neither imposed restitution for uncharged conduct nor acquitted conduct in this case. Accordingly, we affirm the trial court's restitution order.

### III.    Disposition

¶ 43    For the reasons set forth above, the trial court's judgment of conviction and order of restitution are affirmed.

JUDGE J. JONES and JUDGE SCHOCK concur.