23CA1601 Peo in Interest of RO-S 04-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1601
Adams County District Court No. 23JD325
Honorable Ingrid S. Bakke, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of R.O-S.,

Juvenile-Appellant.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE KUHN
Welling and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

---

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

Megan A. Ring, Colorado State Public Defender, Sean James Lacefield, Deputy State Public Defender, Denver, Colorado, for Juvenile-Appellant

¶ 1      R.O-S., a juvenile, appeals the district court's restitution order in his delinquency case.  We affirm.

## I.      Background

¶ 2      According to the arrest affidavit, R.O-S. broke into a vape store by smashing the front glass door with a chair when he was seventeen years old.  He took multiple products from the store, including bongs, boxes of vape cartridges, and a butane lighter.

¶ 3      The prosecution filed a petition in delinquency, alleging that R.O-S. committed acts that, if committed by an adult, would constitute second degree burglary, misdemeanor criminal mischief, and theft of between $300 and $1,000.  *See* § 18-4-203(1), (2)(a), C.R.S. 2024 (class 4 felony second degree burglary); § 18-4-501(1), (4)(c), C.R.S. 2024 (class 1 misdemeanor criminal mischief); § 18-4-401(1), (2)(c), C.R.S. 2024 (class 2 misdemeanor theft).

¶ 4      The parties resolved the case through a plea agreement.[1]  In exchange for the dismissal of his original charges, R.O-S. pleaded guilty to an added count of theft of $1,000 or more but less than $2,000, a class 1 misdemeanor.  *See* § 18-4-401(2)(e).  During the

---

[1] No written or transcribed plea agreement appears in the record on appeal.

1

providency hearing, R.O-S.'s counsel informed the district court that R.O-S. had agreed to open sentencing "[a]nd then the amount of restitution that was submitted by the [prosecutor]."[2] The court approved the plea agreement and later sentenced R.O-S. to six months of probation and twenty-four hours of community service.

¶ 5 At sentencing, R.O-S. objected to the prosecutor's restitution request of $3,115.41. This figure consisted of the following losses that the owner of the vape store claimed he suffered as a result of the incident: $790.55 for a temporary board-up of the shattered glass front door; $679.15 for replacing the door; $1,362.71 for tinting the new glass door and retinting the adjacent windows in the storefront, which weren't damaged during the incident; and $283 for the wholesale value of the stolen goods.

¶ 6 Following an evidentiary hearing, the district court awarded restitution for all the claimed losses with a $70 deduction for an

---

[2] Because we don't have the plea agreement in the record, we can't tell whether R.O-S.'s plea encompassed the restitution amount that the prosecutor had requested before the providency hearing. In any event, the People don't contend that R.O-S. waived his challenge to the restitution award by agreeing to the restitution amount. Consequently, we need not address that issue here. *See City of Aurora v. 1405 Hotel, LLC*, 2016 COA 52, ¶ 16 n.3 (declining to address an issue that the parties didn't present on appeal).

"upgrade to the tint and some reinforcement to the windows/glass."
Accordingly, the court ordered R.O-S. to pay $3,045.41 in restitution.

## II.     Analysis

¶ 7     On appeal, R.O-S. contends that the district court erred by entering the restitution order because (1) the prosecutor failed to present sufficient evidence that R.O-S. had proximately caused the losses associated with installing new tint on the windows adjacent to the broken door; and (2) the court didn't have the authority to impose restitution in excess of $1,999.99, the upper monetary bound of the class 1 misdemeanor theft charge he pleaded to.  We disagree on both counts.

## A.     Applicable Law

¶ 8     Under section 19-2.5-1104(1), C.R.S. 2024, a court must enter a sentencing order requiring a juvenile to pay restitution when the juvenile has damaged a victim's property.  Restitution in a juvenile delinquency proceeding must be imposed in the same manner as that required by the restitution statute governing adult criminal prosecutions.  § 19-2.5-1104(2).

¶ 9    As relevant here, restitution means "any pecuniary loss suffered by a victim" that "includes but is not limited to all out-of-pocket expenses . . . proximately caused by [the juvenile's] conduct and that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2024. Proximate cause in the restitution context means a cause that, in natural and probable sequence, produced the claimed loss and without which the loss wouldn't have been sustained. *People v. Dyson*, 2021 COA 57, ¶ 13. The prosecution bears the burden of proving by a preponderance of the evidence both the victim's losses and that those losses were proximately caused by the defendant's unlawful conduct. *Id.* at ¶ 12.

¶ 10    "The purpose of the restitution statute is to make the victim whole by placing the victim in the same financial position that he was in before the defendant's unlawful conduct." *People v. Ragsdal*, 2025 COA 9, ¶ 29; *see also* § 18-1.3-601(1)(b), C.R.S. 2024 (stating that convicted offenders must "make full restitution to those harmed by their misconduct"). However, "a defendant may not be ordered to pay restitution for losses unless they stem from the conduct that was the basis of the conviction." *People v. Poot-Baca*,

2023 COA 112, ¶ 45.  Consequently, unless otherwise agreed, "a district court may not award restitution for damages arising from criminal conduct (1) of which the defendant was acquitted; (2) for which the defendant was never criminally charged; or (3) which underlies a dismissed charge."  *Id.* (quoting *People v. Moss*, 2022 COA 92, ¶ 13).

### B.    Standard of Review

¶ 11    Generally, we review a district court's restitution order for an abuse of discretion, meaning that we won't disturb the order unless it is manifestly arbitrary, unreasonable, or unfair or based on the court's misinterpretation or misapplication of the law.  *People v. Sosa*, 2019 COA 182, ¶ 10.  But we review de novo a party's argument that the district court lacked authority to impose restitution.  *See id.* at ¶ 11 (reviewing de novo whether the trial court had the authority to impose restitution for losses associated with uncharged conduct); *Cowen v. People*, 2018 CO 96, ¶ 11 ("[W]e agree with the parties that whether a trial court has authority to impose restitution for losses suffered as a result of acquitted conduct is a question of law."); *People v. Roddy*, 2021 CO 74, ¶ 23

(reviewing de novo whether the district court had the authority to impose restitution for dismissed charges).

¶ 12    The parties dispute the proper standard of review for assessing R.O-S.'s argument that the prosecution failed to present sufficient evidence that he had proximately caused the pecuniary losses related to the adjacent storefront windows' retinting.  R.O-S. frames this issue as a "true" challenge to the sufficiency of the evidence and asserts that we should review it de novo.  Under that standard of review, we evaluate "whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, establishes by a preponderance of the evidence that the defendant caused [the particular] amount of loss." *People v. Barbre*, 2018 COA 123, ¶ 25; *see also Martinez v. People*, 2024 CO 6M, ¶¶ 19-20 (noting that we review sufficiency of the evidence challenges de novo when asked to address whether the prosecution presented a quantum of evidence that was substantial and sufficient to support the district court's restitution award).

¶ 13    The People agree that we review de novo sufficiency of the evidence claims.  But they also point out that we "will not disturb a [district] court's determination of proximate cause for restitution

purposes unless it is clearly erroneous" and go on to argue that we should uphold the district court's restitution order here because the record supports the court's determination that R.O-S. was responsible for the tinting-related amounts. *See Martinez*, ¶¶ 3, 32 (holding that clear error is the appropriate standard of review for evaluating a district court's determination of proximate cause for restitution). In other words, while R.O-S. posits that we should review this issue de novo, the People assert that clear error review is appropriate.

¶ 14     While we review R.O-S.'s sufficiency of the evidence claim de novo as he framed it, we note that we would reach the same conclusion under either standard.

> C.     The District Court Didn't Err by Including
> the Tinting-Related Costs in the Restitution Award

¶ 15     R.O-S. contends that the district court erred by requiring him to pay $1,292.71 in restitution for the tinting expenses because the prosecution didn't present sufficient evidence that he had proximately caused all of those expenses. Specifically, R.O-S. argues that the prosecution failed to show "beyond mere speculation" that the owner of the store had retinted the adjacent

windows because of R.O-S.'s unlawful conduct.  Consequently, he asserts, the district court erred by awarding any amounts related to the cost of the retinting work.  We're not persuaded.

¶ 16    As mentioned above, the district court subtracted from the award $70 that the owner of the store had spent on the tinting film that was equipped with shatter-resistant features.[3]  In determining that R.O-S. was responsible for all the other retinting costs, the court found that while the front door and the adjacent windows had previously been tinted, "the tinting was quite old."  The court also found that when the owner replaced the shattered glass front door and tinted the new door, "there was a different look as a result of the new tint on the door and the old tint on the adjacent windows." The court likened these circumstances to the following scenario:

> The way [the court] look[s] at the tinting
> though as if this had been a business that was
> painted, and the paint's been sitting for [ten to
> fifteen] years and faded.  And then, you have to
> do the repair of the damage. . . .   [Y]ou have
> brand new paint sitting next to old paint and

---

[3] It is somewhat unclear from the record if this amount covered only the cost of the "upgrade" for the front door or for the entire tinting project.  However, because R.O-S. doesn't argue in his briefing that this ambiguity itself affects the propriety of the restitution order, we also need not address that question here.  *See 1405 Hotel, LLC,* ¶ 16 n.3.

they don't match. And therefore, there is a degradation arguably of the building in terms of that difference between. So in a sense that's damage. They don't match [anymore]. And in order to make your building or your home or whatever . . . look the way it did before it was damaged, you have to paint it again or tint the windows.

Put differently, the court reasoned that the owner had to retint the adjacent windows so that all the glass in the storefront would look uniform. Under these circumstances, it found "that the decision to tint the adjacent glass, even though it was not damaged, was reasonable and needed to be done as a direct result of [R.O-S.'s] actions."

¶ 17    We conclude that the prosecution presented sufficient evidence in support of the district court's proximate cause determination. The record shows that the front door and the adjacent windows were already tinted at the time of the incident and that the existing tint "could have been [twenty] years old." The owner of the store testified at the restitution hearing that after he replaced the glass in the front door, he installed a new tint and decided to pay an extra $70 "for like the better . . . security tint" "that [would] prevent the glass from imploding even better than it

9

did before." When defense counsel asked the owner whether he had also "upgraded" the surrounding windows, the owner articulated his reasons for getting a matching tint on the windows:

> Well [the tinting company] had to retint . . . the whole store front. There's three windows *because they had to match the color, the shade of the -- like if you take two different brands of tint and put them side by side, [the windows] are always going to look different. So it would look like a patchwork.* So [the tinting company] ended up -- they retinted the whole front while they were there. The other thing too was [that the tinting company] had a minimum [square footage requirement]. They were like, oh, well we . . . can't just do your door. We have to do the -- for two reasons to . . . get [the tint on the windows] to match the door and also [for the tinting company] to do their service call because they said they needed, like, a certain square footage, so it was just a few more square feet to do the -- to get them to come out and actually do it . . . .

(Emphasis added.) The prosecution also presented an invoice showing that the tinting company had billed $1,362.71 for completing the work on the door and the windows. And the owner testified that he had paid that amount.

¶ 18 This is sufficient evidence supporting the court's findings of fact underlying its proximate cause determination because it shows that the owner had retinted the adjacent windows in part to avoid a

10

patchwork appearance that would have resulted had the owner installed a new tint only on the front door's glass that R.O-S. had damaged during the incident.

¶ 19     In arguing otherwise, R.O-S. asserts that the owner only decided to replace the window tint because he wanted the adjacent windows equipped with the same security-enhanced film as the glass in the front door.  He asserts that the owner's "testimony showed that [the owner] chose to upgrade the tinting [on the front door], which created the mismatch and in turn [the owner] had the undamaged windows retinted to match."  R.O-S. therefore disputes the district court's interpretation of the owner's testimony and contends that the security upgrade, not his damage to the front glass door, was what caused the owner to retint the adjacent windows.

¶ 20     It is true that the owner testified that he did the retinting work on the windows "for the aesthetic reasons to match the type . . . because [he] did the security style [tint on the front door] that helps with burglaries and break-ins, so they matched."  But the owner also testified that the shade of the tint wouldn't match between any two brands and that he didn't know the brand or

11

rating of the some-twenty-year-old original tint that was on the windows. He testified that he had therefore retinted the windows "to match the color, the shade" of the front door tint. So we don't agree with R.O-S.'s argument that it was solely the security upgrade that created the mismatch.

¶ 21 On this point, R.O-S. is essentially challenging the weight of the evidence and the district court's resolution of any disputes and ambiguities in the owner's testimony. But as the fact finder, it was for the district court to determine the credibility of the witnesses, resolve conflicts in the evidence, and decide what weight to give each piece of evidence. *See People in Interest of A.V.*, 2018 COA 138M, ¶ 29; *People v. Poe*, 2012 COA 166, ¶ 14. Our sufficiency review doesn't entail making such determinations.

¶ 22 In sum, viewing the evidence in the light most favorable to the prosecution, we conclude that the prosecution presented sufficient evidence to prove by a preponderance of the evidence that R.O-S.'s unlawful conduct proximately caused the tinting-related expenses. *See Barbre*, ¶ 25. Under these circumstances, then, the district court didn't err by including in the restitution award the $1,292.71 that the store owner had incurred in connection with that work.

## D. The District Court Had the Authority to Impose Restitution in Excess of the Statutory Maximum For the Charge

¶ 23     R.O-S. next contends that the district court lacked authority to impose restitution in excess of the maximum amount of damages supporting the theft offense to which he pleaded guilty. Specifically, he argues that because he pleaded guilty to theft of $1,000 or more but less than $2,000, his restitution obligation must be capped at $1,999.99, and the court erred by imposing restitution in excess of that amount.

¶ 24     In advancing this argument, R.O-S. analogizes his case with *People v. Knapp*, 2020 COA 107. As R.O-S. points out, in *Knapp* the prosecution charged the defendant with, among other things, "criminal mischief as a class 6 felony (based on damage of at least [$1,000] but less than [$5,000]), but the jury found, through its interrogatories, that he committed only a class 1 misdemeanor (based on damage of at least $750 but less than [$1,000])." *Id.* at ¶ 77. On appeal, Knapp argued that the trial court erred by requiring him to pay more than $13,000 in restitution because that award exceeded the maximum amount of damages set out in the

misdemeanor criminal mischief statute under which he had been convicted. *Id.* at ¶¶ 66-67.

¶ 25    A division of this court agreed with him, holding that "where a defendant is charged with one level of offense but is convicted of only a lower-level offense, an award of restitution for that offense is limited to the amount consistent with the jury verdict." *Id.* at ¶ 81. The division reasoned that the jury's finding that Knapp was guilty only of misdemeanor criminal mischief operated "as an implied (if not express) acquittal of the felony criminal mischief count charged by the prosecution." *Id.* at ¶ 77. And because a court doesn't have the authority to impose restitution "for pecuniary losses caused by acquitted conduct," *Cowen,* ¶ 24, the *Knapp* division concluded that the trial court violated this principle by entering a restitution award that exceeded the upper bound of "$999.99 set out for [the] class 1 misdemeanor" criminal mischief charge of which Knapp had been convicted. *Knapp,* ¶ 81.

¶ 26    However, the case before us is distinguishable from *Knapp.* Unlike the defendant in *Knapp,* who was charged with a higher-level felony offense but was convicted of a lower-level misdemeanor offense, R.O-S. wasn't acquitted of any conduct in connection with

14

the incident. To the contrary, the prosecution originally charged R.O-S. with class 2 misdemeanor theft of $300 or more but less than $1,000 along with second degree burglary and criminal mischief. But he pleaded guilty to a *higher-level* class 1 misdemeanor theft in exchange for the dismissal of the original charges. Simply put, R.O-S. pleaded to the conduct in this case. He wasn't acquitted of any conduct, expressly or impliedly.

¶ 27 While it is true that the prosecution dismissed, among others, the original lower-level theft charge to effectuate the parties' plea agreement, the conduct underlying the dismissed charge was *also* the conduct underlying the offense to which R.O-S. pleaded and for which he was ordered to pay restitution. *Cf. Roddy*, ¶ 33 (concluding that the district court's restitution order was improper to the extent the court granted restitution based on any conduct that was exclusively related to dismissed charges). Accordingly, this is not a case where the court ordered restitution for losses caused by acquitted conduct, *see Cowen*, ¶ 24, or conduct underlying a dismissed charge, *see Roddy*, ¶¶ 30-33.

¶ 28 Instead, R.O-S.'s circumstances are analogous to those that a division of this court recently addressed in *Ragsdal*. In that case,

"Ragsdal was charged with and convicted of [second degree] burglary and [misdemeanor] theft of $50 or more but less than $300 based on allegations that he unlawfully entered the victim's home and stole the keys to two vehicles and a shed." *Ragsdal*, ¶¶ 1, 8; *see also* § 18-4-203(1), (2)(a), C.R.S. 2020 (the version of the second degree burglary statute in effect when Ragsdal committed the offense); § 18-4-401(1), (2)(c), C.R.S. 2020 (the version of the theft statute in effect at the time of Ragsdal's offense). The trial court ordered Ragsdal to pay $501.92 in restitution, which was the total cost for the victim to replace the missing keys and to change the locks on the shed. *See Ragsdal*, ¶¶ 11, 28. Like R.O-S. here, Ragsdal argued on appeal that the trial court erred in entering the restitution award because its amount exceeded "the [$300] upper monetary limit of the theft statute he was charged under and convicted of violating." *Id.* at ¶¶ 2, 35.

¶ 29 The division rejected this argument and upheld the restitution order, in part, because Ragsdal "wasn't ordered to pay restitution for acquitted conduct" since the prosecution hadn't charged him with theft in excess of $300, and the jury only found him guilty of theft of less than $300. *Id.* at ¶ 35. Rather, he was charged with

16

and convicted of the lower-level theft count, and "[t]he pecuniary losses included in the restitution order [were] directly related to the unlawful conduct underlying Ragsdal's charges and convictions." *Id.* at ¶¶ 35, 39.

¶ 30    We agree with the *Ragsdal* division's reasoning. "The [restitution] statute focuses on a defendant's *criminal conduct*" and pecuniary losses proximately caused by that conduct, not the charged offense itself. *Id.* at ¶ 41 (emphasis added); *see also* 18-1.3-602(3)(a) (defining restitution as any pecuniary loss proximately caused by an offender's conduct). Indeed, cases like *Knapp, Cowen, Sosa,* and *Roddy* limit a district court's authority in imposing restitution based on conduct underlying the particular restitution damages. They hold that the court may not award restitution based on conduct for which the defendant was acquitted or not charged or for which the charges were dismissed. *See Knapp,* ¶ 81; *Cowen,* ¶ 24; *Sosa,* ¶ 26; *Roddy,* ¶¶ 30-33. But when the victim's pecuniary losses were proximately caused by the criminal conduct that constitutes the basis for the defendant's conviction, the restitution statute requires the district court to order the defendant to make full restitution to the victim by paying an

17

amount that is sufficient to place the victim in the same financial position the victim was in before that conduct. § 18-1.3-601(1)(b). As the *Ragsdal* division put it, "charging a defendant with a lower-level theft count than the evidence ultimately supports isn't a basis for capping a restitution award if the record establishes that the same criminal conduct that supports the defendant's charge and conviction proximately caused losses in excess of th[e] amount [set out in the theft statute]." *Ragsdal,* ¶ 41.

¶ 31 Here, R.O-S. pleaded guilty to misdemeanor theft of up to $1,999.99. However, the evidence presented at the restitution hearing supports the district court's determination that R.O-S.'s break-in and ensuing conduct proximately caused the victim pecuniary losses exceeding that amount. Under these circumstances, we conclude that the district court didn't lack authority to order R.O-S. to pay $3,045.41 in restitution.

### III. Disposition

¶ 32 The order is affirmed.

JUDGE WELLING and JUDGE SCHUTZ concur.