25CA0070 Peo in Interest of GL 06-18-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0070
City and County of Denver Juvenile Court No. 23JD571
Honorable Lisa Gomez, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of G.L.,

Juvenile-Appellant.

ORDER AFFIRMED

Division V
Opinion by JUDGE YUN
Lipinsky and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 18, 2026

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

McCabe Law, Alison Gordon, Boulder, Colorado; Stinson Law Office, Amy Maas, Denver, Colorado, for Juvenile-Appellant

¶ 1    G.L. appeals the district court's restitution order in the amount of $2,400 for dismissed charges in Denver Juvenile Court Case No. 24JD402. He contends that the court erred by (1) "finding that causation was proven" and (2) "imposing restitution for damages not caused by the conduct essential to the charges." We affirm.

## I.    Background

¶ 2    In September 2024, G.L. entered a global plea agreement resolving charges in two separate cases, Denver Juvenile Court Case Nos. 23JD571 and 24JD402. In Case No. 23JD571, G.L. was charged with third degree motor vehicle theft. *See* § 18-4-409(4)(a), C.R.S. 2025. Later, in Case No. 24JD402, G.L. was charged with third degree motor vehicle theft and second degree trespass to a motor vehicle involving a different victim. *See* § 18-4-409(4)(a); § 18-4-503(1)(a), C.R.S. 2025.

¶ 3    Under the global agreement, the prosecution dismissed the charges in Case No. 24JD402. In exchange, G.L. pleaded guilty to motor vehicle theft in Case No. 23JD571 under a deferred adjudication, stipulated to one year of probation, and agreed that restitution was reserved "for all original counts in [Case

1

Nos. 23JD571] and 24JD402." The plea agreement did not provide a factual basis for the charges, identify the victims, or include a stipulation to causation for restitution in either case.

¶ 4     The prosecution filed a motion seeking $5,335.79 in restitution, $3,795.42 of which was allocated to the victim in the dismissed case, 24JD402 — the property manager for West Nevada Townhomes (the property). The motion included the property manager's victim impact statement, which listed G.L.'s name in the header. In the fillable section for the "effects of this crime on you/your family," the property manager wrote: "By Him stealing the keys to the property + my car [he] has caused me overwhelming [stress] + fear, my Boss no longer trust me . . . sleepless nights, my relationships with my boss + tenants has been [severely damaged]." In the fillable section for losses, the property manager also wrote, "The keys he stole were the master keys to all the units, garages + sprinkler rooms on the property. I have to pay my boss the full amount." He further said that, although the "keys to my car" were returned, "the keys to the property" were not. As a result, the property manager's employer billed him for re-keying every unit on

the property.  The victim impact statement included an itemized bill totaling $3,795.42: $2,356.86 for re-keying and $1,438.56 for labor.

¶ 5      At the sentencing hearing, before accepting the global plea and scheduling a hearing to determine the amount of restitution, the district court confirmed that all parties had received the presentence report and the restitution motion.  The court said that it would "dismiss 24JD402 with the knowledge that we're going to be addressing those victims" in 23JD571.

¶ 6      At the restitution hearing, the prosecution requested restitution in the amount of $3,795.42 — the amount of losses that the property manager reported in the dismissed case.[1]  The prosecution offered the property manager's victim impact statement, the bill from his employer, and his testimony. The property manager testified as follows:

- He resided onsite at the property, which he managed for his employer.

---

[1] Previously, the prosecution had also sought $1,540.37 in restitution for the victim in Case No. 23JD571.  At the time of the restitution hearing, G.L. and a codefendant in Case No. 23JD571 had repaid that victim $1,254.21.

- One night, while inspecting a unit with a broken window, he set his "keys down by the broken window." His keyring included his car key fob and the property's master keys.

- He saw G.L. in the unit during his inspection of the broken window. He recalled that G.L. was a friend of the tenant's son, who lived there.

- After addressing the situation in the unit and notifying his employer, he returned to his own unit. He left his keys at the unit with the broken window.

- The next morning, he could not find his keys and discovered that his car was missing from the garage.

- A day or two later, he recovered his car and key fob from an impound lot, but the master keys were never returned. There was no damage to the car's steering column.

- His employer garnished his paychecks at a rate of $200 per week for two months to cover the cost of re-keying the forty units at the property. The property manager said he lost his job in part because of the incident.

- On cross-examination, he admitted that he did not remember where he had left his keys and he did not see who took them, entered his garage, or took his car.

¶ 7 Based on the property manager's testimony, the district court found that the prosecution had proved causation for $2,400 in restitution[2]:

> In the course of his testimony, [the property manager] indicated that in responding to a domestic situation at the [property], he believes he either left the keys outside of the area where a broken window was and then subsequently testified he really did not recollect where the keys were, but, ultimately, was able to provide very credible testimony that he received a key fob back for his Mercedes, which was stolen. The only way to operate that Mercedes was to have the key fob. The key fob happened to be attached to at least three master keys for the [property,] which he managed and that, as a result of the conduct of that motor vehicle theft, he was determined to be liable for the cost associated with replacing the 40 locks that those master keys had access to.
>
> . . . .

---

[2] The court declined to order the full $3,795.42, noting that $1,438.56 of this amount was for "labor to remove and replace the locks," performed by a salaried employee.

> Because, frankly, had his keys . . . not been taken, had his car not been taken, [the property manager] may very well still be employed . . . , may very well not have had to pay the amount of money that he had to pay by garnishment, and we wouldn't be here.
>
> . . . .
>
> [The property manager] testified that the only way to operate his motor vehicle was through the fob. The fob was present — the keyboard — the dashboard was not damaged. The person who had the fob, in my estimation, is the person who stole the vehicle. [G.L.], in the course of his plea, agreed to restitution in this case. That is the causation that I'm finding.

¶ 8     G.L. now appeals.

## II.     Analysis

¶ 9     G.L. argues that the district court erred by ordering restitution because proximate cause was not established. He specifically argues that neither the plea agreement nor the evidence presented at the restitution hearing supported the court's causation finding. Additionally, he argues that, even if causation was established, the "court was legally prohibited from imposing restitution for damages not caused by the conduct essential to the charges" of third degree motor vehicle theft and second degree trespass to a motor vehicle —

namely, the damages caused by the missing master keys. We disagree with both contentions.

### A. Standard of Review

¶ 10    Whether a district court has authority to impose restitution for losses suffered as a result of dismissed charges is a question of law that we review de novo. *People v. Roddy*, 2021 CO 74, ¶ 23 (citing *Cowen v. People*, 2018 CO 96, ¶ 11). We likewise review de novo the parties' obligations under a plea agreement. *Id.* at ¶ 24.

¶ 11    In the restitution context, when a defendant challenges the court's determination that he proximately caused the victim's losses, we generally review for clear error. *Martinez v. People*, 2024 CO 6M, ¶ 32. But "we consider the challenge's substance, not its form," to determine the appropriate standard of review. *Id.* at ¶ 20. When, as here, the defendant challenges the sufficiency of the evidence supporting the restitution order — that is, a challenge to the *quantum* of evidence provided by the prosecution to the court — we review de novo. *See id.* at ¶¶ 19-22; *People v. Moss*, 2022 COA 92, ¶ 11. In other words, "our de novo determination is whether the prosecution presented sufficient evidence to convince a reasonable fact finder by a preponderance of the evidence" that the defendant's

7

conduct was a proximate cause of the victim's losses. *Moss*, ¶ 11. When conducting this review, we determine "whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, establishes by a preponderance of the evidence that the defendant caused that amount of loss." *People v. Barbre*, 2018 COA 123, ¶ 25.

¶ 12    We also review issues of statutory interpretation de novo. *People v. Henry*, 2018 COA 48M, ¶ 13. When construing a statute, our goal is to give effect to the General Assembly's intent. *People v. Webb-Johnson*, 113 P.3d 1253, 1253 (Colo. App. 2005). To determine the General Assembly's intent, we first look to the statute's language, giving words and phrases their plain and ordinary meanings. *Henry*, ¶ 14.

## B.    Relevant Law

¶ 13    The purpose of restitution "is to make the victim whole by placing the victim in the same financial position that he was in before the defendant's unlawful conduct." *People v. Ragsdal*, 2025 COA 9M, ¶ 29. Under section 19-2.5-1104(1), C.R.S. 2025, in a juvenile delinquency case, the district court must enter a sentencing order requiring the juvenile to pay restitution when the

juvenile has damaged a victim's property. Restitution in juvenile delinquency cases must be imposed in the same manner as that required by the restitution statute governing adult criminal prosecutions. § 19-2.5-1104(2).

¶ 14    As relevant here, restitution means "any pecuniary loss suffered by a victim," including, but not limited to, "all out-of-pocket expenses . . . proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2025. "Proximate cause in the context of restitution is defined as a cause which in natural and probable sequence produced the claimed injury and without which the claimed injury would not have been sustained." *People v. Dyson*, 2021 COA 57, ¶ 13 (quoting *People v. Rice*, 2020 COA 143, ¶ 24, *overruled on other grounds by*, *People v. Weeks*, 2021 CO 75).

¶ 15    The prosecution bears the burden of proving by a preponderance of the evidence "the amount of restitution owed and, generally, that the defendant's conduct was the proximate cause of the victim's loss." *Henry*, ¶ 15; *see Barbre*, ¶ 30. "A fact is established by a preponderance of the evidence when, upon consideration of all the evidence, the existence of that fact is more

probable than its nonexistence." *People v. Garner*, 806 P.2d 366, 370 (Colo. 1991). This burden requires more than speculation, but the prosecution need not prove restitution by the same quality of evidence required in a criminal trial on the merits. *People in Interest of A.V.*, 2018 COA 138M, ¶ 24.

¶ 16 The prosecution is not limited by the rules of evidence in meeting its burden of proof. *People v. Ortiz,* 2016 COA 58, ¶ 28; *see also* CRE 1101(d)(3) (the rules of evidence do not apply to sentencing). Under Colorado law, an award of restitution may be based solely on a victim impact statement (which itself is hearsay). *Ortiz,* ¶ 28; *see also* § 18-1.3-603(2), C.R.S. 2025 ("The court shall base its order for restitution upon information presented to the court by the prosecuting attorney, who shall compile such information through victim impact statements or other means to determine the amount of restitution . . . ."); *A.V.,* ¶ 33 ("To meet its burden of proof, a prosecutor may rely solely on victim impact statements.").

¶ 17 Even if the prosecution carries its burden of proof, the district court "may not order restitution for injury or losses proximately caused by conduct that forms the basis of only the dismissed

charge[s]" *unless* the prosecution and the defendant "strike a plea agreement that extends the scope of the restitution order to include . . . dismissed counts." *Roddy*, ¶¶ 28, 32; *see also* § 18-1.3-603(11) ("Absent an agreement between the defendant and the prosecution at the time the plea is entered, a court may not impose restitution for pecuniary losses proximately caused by conduct exclusively related to dismissed charges."); *People v. Sosa*, 2019 COA 182, ¶ 29 (noting the defendant may enter "into a plea agreement pursuant to which dismissed or uncharged counts will be considered for purposes of restitution").

¶ 18    In sum, the district court may order restitution for pecuniary losses suffered by the victim in a dismissed case if (1) the defendant explicitly agrees at the time of the plea agreement to pay restitution for his dismissed charges and (2) the prosecution proves at the restitution hearing that it is more probable than not that the defendant's conduct caused the victim's losses.

### C.    Discussion

¶ 19    As an initial matter, we agree with G.L. that his plea agreement did not constitute a stipulation that his alleged conduct in the dismissed case caused losses to the property manager.  The

plain language of his plea agreement — "reserving restitution for all original counts in [23JD571] and 24JD402" — simply preserved the prosecution's ability to seek restitution for the dismissed charges. It did not admit or resolve causation. *See Roddy*, ¶ 24 ("Our task is not to rewrite the bargain in question, but to interpret it consistently with the reasonable intent of the parties in light of the defendant's right to be treated fairly by the government." (citation omitted)). Thus, while the plea agreement allowed the court to consider restitution for losses related to the dismissed charges, the prosecution still bore the burden of proving at the restitution hearing that it was more probable than not that G.L.'s conduct caused the property manager's losses.

¶ 20 This conclusion is supported by Colorado case law permitting a defendant to challenge proximate cause even when they agreed at the time of their plea agreement to pay restitution for dismissed charges. *See Martinez*, ¶¶ 6-8, 33-43 (allowing a defendant who agreed by plea to pay restitution for dismissed charges to challenge proximate cause); *Rice*, ¶¶ 18-19 (concluding the defendant did not waive his right to challenge causation by signing a plea agreement that said "[d]ismissed counts will be considered for sentencing and

restitution purposes"); *A.V.*, ¶ 16 (acknowledging that "simply stipulating to a factual basis [in a plea] may be insufficient to waive causation where the issue of causation is not specifically identified or discussed"). Thus, the court could not rely on the plea agreement alone as proof that G.L.'s conduct was a proximate cause of the property manager's losses.

¶ 21 Because the plea agreement did not relieve the prosecution of its burden of proof, we next consider whether the prosecution presented sufficient evidence at the restitution hearing for the court to find that G.L. proximately caused the property manager's losses. G.L. argues that the record did not support the court's reasoning for finding causation because the evidence at the hearing did not establish that G.L. was the person who took the key fob or stole the vehicle. Specifically, G.L. emphasizes that the property manager testified to seeing G.L. at the unit where the property manager might have left his keys but conceded that he did not see G.L. with his keys, with his car, or in his garage. We are not persuaded.

¶ 22 Viewing both the direct and circumstantial evidence in the light most favorable to the prosecution, *Barbre*, ¶ 25, there was sufficient evidence presented at the hearing for a reasonable fact

finder to conclude by a preponderance of the evidence that G.L. took the keys. The property manager testified that he left his keyring near a broken window in the unit he was inspecting, saw G.L. in that same unit, and discovered his car missing from the garage the next morning. The prosecution also introduced, without objection, the victim impact statement. The header of the statement identifies G.L. as the "[d]efendant," and the property manager wrote that "the keys he stole were the master keys to all the units, garages, and sprinkler rooms on the property." He further described the losses he suffered as a result of G.L. "stealing the keys to the property and my car." Although this statement is arguably inconsistent with the property manager's cross-examination testimony that he did not see who took the keys, entered the garage, or took the car, it was for the district court to resolve conflicts in the evidence, assess the credibility of witnesses, and determine the weight to give each piece of evidence. *See A.V.,* ¶ 29; *People v. Poe*, 2012 COA 166, ¶ 14. Our sufficiency review does not extend to making such determinations. Thus, considering the property manager's testimony and the victim impact statement together, we cannot say there was insufficient evidence to support

the court's finding that G.L.'s conduct caused the property manager's losses.

¶ 23    Given the evidentiary support for the court's causation finding, we turn to G.L.'s argument that the court was "legally prohibited from imposing restitution for damages not caused by the conduct essential to the charges" — third degree motor vehicle theft and second degree trespass to a motor vehicle.  *See* § 18-4-409(4)(a); § 18-4-503(1)(a).  He contends that taking the master keys was not an element of either offense, and thus not a compensable loss, because the "prosecution did not charge G.L. with theft of the [property's] master keys."

¶ 24    Neither the restitution statute nor case law supports this narrow view of compensable losses.  The statute must be "liberally construed" to achieve its purposes, including "to provide for and collect full restitution for victims of crime."  § 18-1.3-601(1)(g)(I), (2), C.R.S. 2025; *see also Sosa*, ¶ 14 ("We liberally construe the restitution statute to accomplish its goal of making victims whole for the harms suffered as the result of a defendant's criminal conduct." (citation omitted)); *People v. Knapp*, 2020 COA 107, ¶ 90 (recognizing that victims are entitled to be put in the same financial

position they would have been in had the crime not occurred). The General Assembly defined restitution not by reference to the *elements* of the charges, but by the *conduct* underlying the convictions or plea agreement. § 18-1.3-602(3)(a). Divisions of this court have routinely affirmed restitution awards for losses that do not directly correspond to the elements of an offense. *See Moss*, ¶ 18 (restitution "must be tied to unlawful conduct" but need not be tied "to a specific element of the crime"); *People v. Knapp*, 2020 COA 107, ¶ 83 (upholding restitution for schoolbooks the victim no longer needed because the defendant's assault caused the victim to drop out of school); *People v. Courtney*, 868 P.2d 1126, 1128 (Colo. App. 1993) (upholding restitution for lost tools in the trunk of a fraudulently obtained vehicle).

¶ 25 To facilitate his theft and trespass of the car, G.L. took the keyring with the key fob and master keys. This act — a necessary step in stealing the car — set in motion a "natural and probable sequence [that] produced the claimed injury": the need to re-key the units. *Dyson*, ¶ 13 (quoting *Rice*, ¶ 24). The prosecution was not required to separately charge G.L. with theft of the master keys because this conduct was integral to the theft of the vehicle. Nor

16

does G.L. argue that any intervening event broke the causal chain. *See Martinez*, ¶ 83. Accordingly, the court did not err by ordering restitution for the cost of re-keying, as G.L.'s conduct proximately caused this loss.

### III. Disposition

¶ 26    The restitution order is affirmed.

JUDGE LIPINSKY and JUDGE SCHUTZ concur.